OPINION OF THE COURT
Meyer, J.
In a foreclosure action based upon nonpayment, the mortgagee’s oral waiver of the right to accelerate the principal and foreclose in order to give the delinquent mortgagor a reasonable opportunity to negotiate an unforced sale of the mortgaged premises constitutes a valid affirmative defense to foreclosure, absent withdrawal of the waiver upon reasonable notice to the mortgagor. Accordingly, because the pleadings and affidavits in this foreclosure action create a triable issue of fact concerning waiver by plaintiff mortgagee and present nothing other than the commencement of the foreclosure action to suggest that plaintiff gave notice of withdrawal, it was error for the Appellate Division to strike from defendant mortgagor’s answer the affirmative defense of waiver and to grant plaintiff summary judgment of foreclosure. It was likewise error to strike defendant Montrose’s counter *179 claim. The judgment appealed from and the nonfinal order of the Appellate Division brought up for review should, therefore, be reversed and the order of Special Term should be reinstated.
I
In February, 1976, defendant Montrose Concrete Products Corporation mortgaged certain property to plaintiff Nassau Trust Company as security for a $300,000 loan. Louis G. Imperato, president of Montrose, and Edna Imperato, his wife, guaranteed the loan. The loan documents required quarterly amortization payments of $3,000 plus interest and gave Nassau Trust the option to accelerate the entire principal upon failure to make payments required by the mortgage within 30 days after the due date.
In February, 1977, Montrose was delinquent in its scheduled payments. Rather than declare a default, however, Nassau Trust entered into a written extension agreement with Montrose which established a new payment schedule. Neither the mortgage nor the note prohibited oral modification of the terms of either, but the extension agreement, which modified the note and mortgage, included a provision that “This agreement may not be changed or terminated orally.” Montrose was unable to honor even the new payment schedule, and in March, 1979, default was declared and foreclosure begun against Montrose and the Imperatos.
Nassau Trust’s complaint relied quite simply upon Montrose’s delinquency under the payment terms of the February, 1977 extension agreement. Montrose and the Imperatos each admitted nonpayment and pleaded affirmative defenses of waiver, unconscionability and unclean hands. Montrose’s answer additionally pleaded a counterclaim for damages equal to the difference between the fair market value of the mortgaged premises at the time the action was commenced and the sale price ultimately received for the premises based upon the facts set forth in the affirmative defenses. The Imperatos’ answer contained no counterclaim but asserted a fourth affirmative defense of release by reason of the extension agreement of February, 1977.
*180 Essentially, the three affirmative defenses common to both answers rested on alleged oral representations made by Nassau Trust officers at three meetings held in June, October and December, 1978. According to Montrose and the Imperatos, Nassau Trust agreed at those meetings to waive any default in payment. In addition, as a result of those meetings, Nassau Trust allegedly knew or should have known that the subsequently initiated foreclosure action would prevent Montrose from concluding a sale of the mortgaged property at a fair market price sufficient to satisfy the balance due on the loan.
Nassau Trust moved to strike the answers of Montrose and the Imperatos as “sham and frivolous,” “demonstrably untrue,” as “constituting] no defense” and for summary judgment of foreclosure. Montrose and the Imperatos jointly opposed the motion with an affidavit by Louis Imperato. That affidavit expanded considerably upon the oral representations allegedly made at the June, October and December, 1978 meetings referred to in the answers. Names of the bank officers present were given. In addition, the affidavit introduced into the litigation a letter dated January 12, 1979 from Nassau Trust Vice-President Stuart C. Saxton to Mr. Imperato. The letter granted Montrose an extension of payment until January 31, 1979 “[pursuant to our conversation this afternoon.” In the letter, Saxton also agreed to consider granting Montrose an additional extension for a “period of time necessary to complete a closing” on the mortgaged property to Imperia Brothers, Incorporated, a competitor of Montrose, if two conditions were met by January 31 — payment of one year’s worth of delinquent real estate taxes and receipt of a signed contract for the sale of all or a portion of the mortgaged property.
The Imperato affidavit, however, set forth in specific detail his version of the telephone conversation of January 12 to which Saxton’s letter referred. According to Imperato, Saxton read him a draft of the letter and Imperato then informed Saxton that under no circumstances could the two conditions for an additional extension be met, and stated that the letter denied him adequate freedom to *181 continue pending negotiations concerning the sale of the mortgaged premises and would require an immediate sale at a distress price. That the affidavit stated facts not conclusions is evident from the quotation following: “Mr. Saxton told me not to lower my asking price. Mr. Saxton said that I should not worry about the terms of the letter and that Nassau Trust would waive any default in meeting its terms until Montrose was able to close a sale to Imperia. I told Mr. Saxton that I would disregard his letter of January 12, 1979 and would contact him as soon as I had more details on the terms of the proposed sale to Imperia. Mr. Saxton agreed to this arrangement on behalf of Nassau Trust. I continued to negotiate with Imperia regarding the terms of the sale with the belief and understanding that Nassau Trust had waived any default during this period.” It also alleged the filing of a lis pendens and the initiation of foreclosure proceedings in March, 1979 by Nassau Trust had caused Imperia to withdraw from then pending negotiations in the expectation that the mortgaged property could be acquired on foreclosure at a far lower price than through negotiation and ended with the accusation that Nassau Trust had breached its agreement “to waive any defaults until the end of 1979.” No reply papers denying or disputing Mr. Imperato’s allegations were submitted by Nassau Trust.
Special Term denied the motion in its entirety reasoning that summary judgment was inappropriate, Nassau Trust having failed to refute the allegations of the Imperato affidavit, which raised issues of fact “the most important of which is whether plaintiff waived the defaults of defendants and its right to commence this action, at least until defendant owners could negotiate an unforced sale of the property.”
The Appellate Division modified the order of Special Term by striking the three common affirmative defenses as well as Montrose’s separate counterclaim and granting summary judgment of foreclosure aganst Montrose. It reasoned that any waiver by oral representation was invalid for want of consideration and that though section 5-1103 of *182 the General Obligations Law[1] dispensed with the need for consideration to support a written waiver signed by the party to be charged, the only such writing was Saxton’s January 12 letter which was subject to the conditions stated in it which concededly had not been complied with. As against the Imperatos it directed that the action be severed for trial of their fourth affirmative defense.
Final judgment of foreclosure having been entered by Special Term on remand to that court, Montrose appeals. The appeal brings up for our review the prior nonfinal Appellate Division order (CPLR 5601, subd [d]). For the reasons which follow, we reverse and reinstate the Special Term order.
II
When a plaintiff moves for summary judgment, it is proper for the court to look beyond the defendant’s answer and deny summary judgment if facts are alleged in opposition to the motion which, if true, constitute a meritorious defense (see Curry v Mackenzie, 239 NY 267; Gem Drywall Corp. u Scialdo & Sons, 34 AD2d 1063, app dsmd 27 NY2d 739; Alside Aluminum Supply Co. v Berliner, 32 AD2d 731; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.10, at n 53).
Here, although the answers rest the first three affirmative defenses upon claimed meetings in June, October and December, 1978 and make no reference to the letter and telephone conversation of January 12, 1979, the unrefuted allegations of Louis Imperato’s affidavit are sufficient to establish triable issues of fact concerning whether plaintiff’s Vice-President Saxton orally assured Imperato that, notwithstanding the contrary written conditions contained in Saxton’s January 12 extension letter, Montrose had up to one year to conclude an unforced sale of the mortgaged property, whether Montrose acted in justifiable reliance upon that assurance to its detriment and whether in conse *183 quence of the bank’s withdrawal of that assurance without notice Montrose lost the opportunity to conclude a negotiated sale at a price more favorable than could be obtained in foreclosure. Because, as is hereafter developed, it cannot be said that these factual issues, if resolved in Montrose’s favor, would nonetheless fail as a matter of law to constitute an affirmative defense to foreclosure, summary judgment should not have been granted to Nassau Trust.
Ill
Although the defenses pleaded are waiver, unconscionability and unclean hands, defendants’ brief argues waiver, estoppel and unconscionability and makes no mention of unclean hands. The cases are not always clear concerning whether what is being discussed is waiver, estoppel, bad faith or unconscionable conduct. They do establish, however, “that a mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter’s part” (Ferlazzo v Riley, 278 NY 289, 292). Consistent with the rule referred to above that a defense established by the papers is sufficient though unpleaded to warrant denial of a motion for summary judgment, we consider not only the defenses pleaded but estoppel as well. We conclude that on the facts alleged the defenses should not have been stricken nor should the counterclaim have been dismissed.
The Appellate Division erred in failing to distinguish between an oral agreement that purports to modify the terms of a prior written agreement and an oral waiver by one party to a written agreement of a right to require of the other party certain performance in compliance with that agreement (see Imperator Realty Co. v Tull, 228 NY 447; Arnot v Union Salt Co., 186 NY 501; Toplitz v Bauer, 161 NY 325; Thomson v Poor, 147 NY 402), and in failing to consider whether the facts set forth in the Imperato affidavit were sufficient to sustain Montrose’s claims of waiver, estoppel, bad faith or unconscionability. Modification of the terms of a mortgage requires consideration except when a statute, such as section 5-1103 of the General Obligations Law dispenses with the need for consideration *184 when a writing (such as the Feb., 1977 extension agreement) exists. Neither waiver (Alsens Amer. Portland Cement Works v Degnon Contr. Co., 222 NY 34, 37; Arnot v Union Salt Co., 186 NY 501, 511, supra; Prentice v Knickerbocker Life Ins. Co., 77 NY 483) nor estoppel (Rothschild v Title Guar. & Trust Co., 204 NY 458, 464; Witherell v Kelly, 195 App Div 227, 233) rests upon consideration or agreement. A modification, because it is an agreement based upon consideration, is binding according to its terms and may only be withdrawn by agreement. An estoppel “ ‘rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury’ ” (Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448; Lynn v Lynn, 302 NY 193, 205; Metropolitan Life Ins. Co. v Childs Co., 230 NY 285, 292). It is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party’s words or conduct, has been misled into acting upon the belief that such enforcement would not be sought (White v La Due & Fitch, 303 NY 122,128). While estoppel requires detriment to the party claiming to have been misled, waiver requires no more than the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable (City of New York v State of New York, 40 NY2d 659; Davison v Klaess, 280 NY 252). A waiver, to the extent that it has been executed, cannot be expunged or recalled (see Alsens Amer. Portland Cement Works v Degnon Contr. Co., 222 NY 34, supra), but, not being a binding agreement, can, to the extent that it is executory, be withdrawn, provided the party whose performance has been waived is given notice of withdrawal and a reasonable time after notice within which to perform (Imperator Realty Co. v Tull, 228 NY 447, 456, supra; Arnot v Union Salt Co., 186 NY 501, 511, supra; Toplitz v Bauer, 161 NY 325, 333, supra; Thomson v Poor, 147 NY 402, 409, supra).
We have applied these principles to extensions of time for the payment of past due interest coupons on mortgage bonds (Arnot v Union Salt Co., supra); for the redemption of an insurance policy pledged for a loan past due (Toplitz v *185 Bauer, supra); for the performance of a contract to peel bark from hemlock trees (Thomson v Poor, supra); and for the removal of violations which would otherwise constitute an objection to title of the real estate contracted to be conveyed (Imperator Realty Co. v Tull, supra), in each case finding that though no legally binding modification existed, an unwithdrawn waiver or waiver and estoppel stood in the way of enforcement of the original agreement. Moreover, lower courts using language of estoppel have upheld an affirmative defense and counterclaim predicated upon a mortgagee’s agreement after a mortgagor’s default to give the mortgagor adequate time to liquidate the mortgaged real property in an orderly fashion (Manufacturers & Traders Trust Co. v Cottrell, 71 AD2d 538) and have also upheld an affirmative defense and counterclaim based upon an alleged agreement by a mortgagee to give the mortgagor additional time to obtain substitute financing (Marine Midland Bank — Western v Center of Williamsville, 48 AD2d 764). The legal principles at work are perhaps best summarized by Judge Cardozo, as he then was, concurring in the Imperator Realty Co. case. To the contention that the Statute of Frauds prohibited enforcement of the agreement to accept a cash deposit in lieu of removal of building violations because the agreement was oral, he responded (228 NY, at p 457): “I do not think we are driven by any requirement of the Statute of Frauds to sustain as lawful and effective this precipitate rescission, this attempt by an ex post facto revocation, after closing day had come and gone, to put the plaintiff [seller] in the wrong. ‘He who prevents a thing from being done may not avail himself of the non-performance which he has, himself, occasioned, for the law says to him, in effect; “This is your own act, and, therefore, you are not damnified” ’. The principle is fundamental and unquestioned. Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. We need not go into the question of the accuracy of the description. The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. The Statute *186 of Frauds was not intended to offer an asylum of escape from that fundamental principle of justice.” (Citations omitted.)
Against this background of decisional law it is evident that even if there were no consideration for Saxton’s alleged assurances made in the telephone conversation of January 12, 1979, the Imperato affidavit sets forth unrefuted facts from which, notwithstanding Montrose’s admitted delinquencies, a waiver of the right to declare a default and foreclose may be found by the trier of fact. Upon the basis of the affidavit may also be found reliance, justifiable by reason of the past history of extension, by Montrose to its detriment in that it continued to negotiate with Imperia rather than to seek other ways out of its dilemma only to have Imperia withdraw from those negotiations when foreclosure was instituted without notice or any reasonable opportunity to cure its defaults or conclude a negotiated sale of the mortgaged premises. Whether Montrose can convince the trier of fact of those facts, or whether Nassau Trust can show that the giving of notice would “have been but an idle ceremony, and could not have changed the situation” (Toplitz v Bauer, 161 NY 325, 335, supra) are questions not before us.
Nor does the provision in the extension agreement against oral change or termination foreclose the defense Montrose now asserts, for subdivision 1 of section 15-301 of the General Obligations Law speaks only to a change by agreement (that is, a modification) and not to a waiver, as is evident from the explicit reference to waiver in subdivisions 4 and 5 of the same section (cf. Rose v Spa Realty Assoc., 42 NY2d 338, 343; General Obligations Law, § 5-1103; Uniform Commercial Code, § 2-209, subd [4]; par 2 of NY Anns to subd [4] [McKinney’s Cons Laws of NY, Book 62-1/2, Part 1, p 183]; 1956 Report of NY Law Rev Comm, pp 371-372).[2]
*187 Montrose argues that, apart from the foregoing equitable principles, there was, indeed, consideration for the January 12, 1979 oral agreement to extend which bound Nassau Trust not to foreclose. The Imperato affidavit states the forbearance period variously as “for one year” (which would mean until January 12, 1980), “until Montrose was able to close a sale of the property to Imperia,” and “until the end of 1979,” but those discrepancies simply create a credibility issue for the trier of fact. Defendants may be able to show detriment to themselves or benefit to Montrose through the continued negotiations with Imperia (Holt v Feigenbaum, 52 NY2d 291, 299; see Raedeke v Gibraltar Sav. & Loan Assn., 10 Cal 3d 665). If consideration is established by the proof there would then be a modification, as distinct from waiver or estoppel. If so Montrose may, in light of the provision in the extension agreement against oral change and of subdivision 1 of section 15-301 of the General Obligations Law, have proved itself out of court, unless it can prove a writing[3] or an estoppel. At the present stage of the action, however, the unrefuted Imperato affidavit is sufficient to require a trial, though, as above noted, the answers will have to be amended to conform the defenses and counterclaims alleged to the allegations and arguments of defendants’ affidavit and brief.
For the foregoing reasons, the judgment appealed from and the nonfinal order of the Appellate Division brought up for review should be reversed and the order of Special Term dated October 31, 1979 reinstated, with costs.[4]

. The section provides: “An agreement, promise or undertaking to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration, provided that the agreement, promise or undertaking changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest, shall be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent.”

. The contention in the dissent that a contracting party has no way to protect himself against a specious claim of waiver is only partially true, for on a trial the fact finder will determine the credibility of the waiver claim. Any argument that the provision of the extension agreement should be sufficient to bar an oral waiver as well as *187 oral modification or termination should be addressed to the Legislature. The Uniform Commercial Code provision above referred to suggests that legislative policy is to the contrary, however, and in light of that fact we certainly would not be warranted in extending subdivision 1 of section 15-301 as the dissent argues. The suggestion in the dissent (pp 191-192) that the January 12, 1979 letter indicated that the bank was withdrawing all waivers including any in the course of the telephone conversation it referred to is not borne out by the letter which speaks of the bank’s patience but uses no language of waiver. Incorrect also is the'dissent’s characterization of subdivision 4 of section 15-301 of the General Obligations Law (p 190); that subdivision speaks not to “oral changes” but only to “termination or discharge.”

. The Montrose brief suggests that once it has had the opportunity for discovery it may be able to turn up a writing meeting the requirements of the subdivision.

. Although costs are awarded, we take the occasion to note that they could well have been denied by reason of appellants’ failure to comply with CPLR 5529 (subd [al, *188 par 3). That paragraph requires that reproduction by facsimile be “in clear type of no less than elite in size.” The guarantees reproduced at pages 50-53 of the record are in very much smaller type and reproduced so poorly as to be in good part unreadable. The extension agreement at pages 54-56 of the record while slightly larger and partly readable do not conform with the rule. We point out the problem not only for the guidance of counsel in this case but also for the attention of the Bar and legal printers in general and to make known that future such cases may result in denial or imposition of costs, as appropriate, or in extreme cases in refusal to receive the record or brief for filing (cf. Slater v Gallman, 38 NY2d 1, 4-5).