RIPPLE, Circuit Judge.
Sybron Transition Corporation and Kerr Manufacturing Corporation (collectively “Sy-bron”) brought this action seeking a determination of their rights under various insurance policies. Hartford Insurance Group (“Hartford”) denied liability on the ground that Sybron’s notice to Hartford of the underlying claim was late as a matter of law. Hartford also counterclaimed for the $500,000 that it had contributed toward the settlement of the underlying claim. The district court entered summary judgment in favor of Hartford on both claims. We affirm.
I
BACKGROUND
Kerr Manufacturing Corporation was sued in Pennsylvania federal and state courts by the estate of Dr. Alan Press in August 1989. Dr. Press had died ifi 1988 from mesothelioma, allegedly caused by exposure to asbestos-containing products that had been manufactured by Kerr.[1] Dr. Press had been exposed to the products while he was a student at the University of Pennsylvania Dental School from 1969 to 1973. During that time period, Sybron had been covered by three insurance companies: Hartford had provided coverage between 1971 and 1974; Security Insurance Company of Hartford (“Security”) had provided coverage between 1968 and 1971; and Insurance Company of North America (“INA”) had provided excess coverage in 1969 and in 1970.
On August 7,1989, Sybron notified Security of the Press claims. As a result, Security undertook the legal defense of Sybron. In May 1991, Sybron, at the request of Security, notified Hartford of the Press suits.[2] Just prior to the notification, Hartford had received a copy of Security’s letter to Sybron, in which Security requested that Sybron notify Hartford of the Press claims. Hartford then received from Security other materials related to the case.
In April 1992, Sybron, Hartford and Security agreed to settle the Press claims. A lump sum of $1.3 million was paid to the estate. Security and Hartford each contributed $500,000 to the settlement. Sybron paid the remaining $300,000. Sybron and its insurers agreed to disburse these funds subject to the terms of a “PARTIAL FUNDING AND NON-WAIVER AGREEMENT” (hereinafter “Settlement Agreement”). In that document, Hartford, Security and Sy-bron agreed to reserve all available rights and defenses:
SECURITY, HARTFORD, and SYBRON agree that the defense of the PRESS LITIGATION extended by SECURITY to SY-BRON, and the contribution made fey pursuant to paragraph 1 of this agreement, do not constitute any admission of coverage, liability, obligation, of [sic] duty under any *-330 policy issued by SECURITY or HARTFORD to SYBRON, and this agreement and the payments referenced herein will never be used as evidence as to the meaning or construction of the SECURITY or HARTFORD policies.... SECURITY, HARTFORD and SYBRON expressly reserve all rights and defenses available to them, including the right to seek recovery from SYBRON, each other, or any other insurance carrier, for any sums paid in settlement of the PRESS LITIGATION.
R.35, Ex.G at 1-2 para. 2. The Settlement Agreement also provided that it “shall be construed pursuant to the law of Connecticut.” Id. at 2 para. 11.
Sybron then sued Security, INA and Hartford in Wisconsin state court seeking a determination of its rights with respect to each of its insurers. After removal to federal court, Hartford moved for summary judgment. Hartford claimed that, because Sybron had failed to provide notice of the Press claims within a reasonable time, a condition precedent to coverage under the Hartford policies was not fulfilled.[3] Hartford subsequently moved for summary judgment on its $500,000 counterclaim, in which it sought the return of the $500,000 it had contributed to the Press settlement.
Sybron responded that whether its notice to Hartford was late is an issue for a jury to decide. Moreover, Sybron, assuming ar-guendo that it had failed to provide timely notice, asserted several other defenses. First, it claimed that Hartford could not rely on untimely notification because Hartford was not prejudiced by the delay. In Sybron’s view, lack of prejudice, which the parties agree is a proper defense under Connecticut law, was one of the “available” defenses reserved in the Settlement Agreement. Second, Sybron claimed that Hartford had waived its late-notice defense by failing to disclaim coverage earlier, by monitoring the Press litigation, and by negotiating and settling the Press claims. Third, Sybron insisted, Hartford was estopped from asserting untimely notice because of the prior statements of Schmalz. Sybron also urged the district court to deny summary judgment on the counterclaim. Sy-bron asserted that Hartford had purposefully failed to inform Sybron, before executing the Settlement Agreement, of its intent to raise subsequently the late-notice defense. As a result, charged Sybron, Hartford had breached the duty of good faith and fair dealing.
The district court granted summary judgment to Hartford on the original claim and on the counterclaim. The court held that New York law governed the dispute because New York is the state with the most significant relationship to the Hartford policies and the parties. The court further held that, under New York law, Sybron’s 22-month delay was unreasonable as a matter of law. The court then disposed of Sybron’s first defense, lack of prejudice, on the ground that New York does not recognize such an exception to the notice requirement. The court rejected Sybron’s attempt to inject Connecticut law into the case through the Settlement Agreement. In this case, the court noted, the insurance policies must be construed, not the Settlement Agreement. The latter contract, said the court, merely reserves defenses; it does not create them. Because Sybron’s defenses all relate to coverage under the Hartford policies, the court held that those defenses, and their availability, are governed by New York law.
The district court also decided that Sybron had faded to raise a triable issue with respect to waiver, estoppel or bad faith. Consequently, the court granted Hartford’s summary judgment motion with respect to Sy- *-329 bron’s original declaratory judgment claim. In addition, because the court had determined that Sybron had forfeited coverage, it granted summary judgment to Hartford on the counterclaim. The court then directed that final judgment be entered in Hartford’s favor pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Sybron now appeals that judgment. '
II
DISCUSSION
We review de novo the district court’s decision to grant summary judgment. Andersen v. Chrysler Corp., 99 F.3d 846, 855 (7th Cir.1996). Summary judgment is appropriate if the record demonstrates “that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Viewing the evidence in the light most favorable to the non-moving party, we must determine whether there is evidence on which a reasonable jury could find for that party. Anderson v. Liberty Lobby, Inc., 471 U.S. 242, 248-52, 255, 106 S.Ct. 2505, 2510-12, 2513-14, 91 L.Ed.2d 202 (1986). A party must present more than mere speculation or conjecture to defeat a summary judgment motion. Karazanos v. Navistar Int’l Transp. Corp., 948 F.2d 332, 337 (7th Cir. 1991).
A. Choice of Law
We must apply Wisconsin’s choice of law principles to determine which state’s law governs this case. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In contract cases, the Supreme Court of Wisconsin utilizes a “grouping-of-contacts approach,” as embodied in the Restatement (Second) of Conflicts.[4] Under Wisconsin law, “[Relevant contacts include: [1] the place of contracting; [2] the place of negotiation of the contract; [3] the place of performance; [4] the location of the subject matter of the contract; and [5] the respective domiciles, places of incorporation and places of business of the parties.” Hystro Prods., Inc. v. MNP Corp., 18 F.3d 1384, 1387 (7th Cir.1994). The approach is not a quantitative one in which we merely count the contacts; instead, we must qualitatively assess which contacts are significant and where those contacts are found. Id.
Applying these principles to the Hartford policies, it is clear that New York law governs the legal effect to be given to those instruments. The place of contracting was New York. The policies were delivered to Sybron in Rochester, New York through Sybroris New York broker. The policies were issued out of Hartford’s Rochester office. Moreover, the parties do not dispute that the policies were negotiated in New York. In addition, Sybron paid its premiums from its New York headquarters. Hartford’s performance consisted of insuring the New York parent corporation. For this reason, New *-328 York also has the most significant connection with the subject matter of the contracts. Cf Utica Mut Ins. Co. v. Klein & Son, Inc., 157 Wis.2d 552, 460 N.W.2d 763, 766 (Ct.App. 1990). Finally, at the time of contracting, Sybron was incorporated, and its principal place of business was located, in New York. Although Hartford was a Connecticut corporation with its principal place of business in Connecticut, the Hartford polices were underwritten and issued out of Hartford’s Rochester office. To be sure, some of the insured occurrences and claims could arise from Sybron’s activities or subsidiaries outside of the state, but New York is nonetheless the state with the most significant relationship with the parties and the Hartford policies. See Urhammer v. Olson, 39 Wis.2d 447, 159 N.W.2d 688, 690 (1968) (noting that place of accident is irrelevant factor in deciding which law governs insurance agreement). Based on a qualitative assessment of the factors involved, we hold that Wisconsin courts would apply New York law to interpret, and to determine the legal scope of, the Hartford policies.[5] Indeed, Sybron does not dispute that New York law controls the interpretation of the terms of the Hartford policies.
Notwithstanding this concession, Sybron insists that its defenses to late notice, and the availability of those defenses, should be governed by another state’s, principally Connecticut’s, law.[6] In support of this contention, Sybron invites our attention to the Settlement Agreement, in which the parties “expressly reserve[d] all rights and defenses available to them.” R. 35, Ex.G at 2 para. 2. The Agreement farther provides that it is to be interpreted pursuant to Connecticut law. Reminding us that one of the defenses “available” to an insured under Connecticut law is lack of prejudice, Sybron urges that it can assert lack of prejudice as a defense. Alternatively, it submits that lack of prejudice, waiver, estoppel and bad faith are defenses that arise apart from the insurance policies. Because the conduct that gives rise to these defenses occurred outside of New York, says Sybron, New York law does not govern the defenses or their availability.
As an initial matter, the Settlement Agreement does not create any rights or defenses. Rather, it reserves those rights and defenses that were “available” to the parties. We have already determined that New York law governs the scope of the parties’ rights and duties under the Hartford policies; those rights and duties include the defenses that are “available.” The Settlement Agreement, by its plain wording, merely incorporates the rights and defenses that Hartford and Sy-bron could have raised under the Hartford policies had there been no settlement at all.
Sybron takes too narrow a view of the extent to which New York law governs this dispute. Because Wisconsin’s grouping-of-contacts approach points to the law of the State of New York, New York law governs not only the technical interpretation of the Hartford policies’ terms, but also the “nature and extent of the rights and duties created *-327 by” the policies. Restatement (Second) of Conflicts § 205 (1971) (boldface omitted). New York law, therefore, “fills the gaps” and applies to substantive issues related to whether the parties have sufficiently performed and whether the parties are excused for non-performance. See id. § 205 cmt. f. Sybron’s defenses, raised under various legal theories, relate to whether Sybron is excused from failing to perform its duty of prompt notification. These defenses go to the substantive rights and duties created by the Hartford policies. It would thwart directly the policy choices embodied in New York law to apply that state’s law to the interpretation of these insurance contracts, thereby recognizing the state’s superior interest in the litigation, but, at the same time, to allow defenses New York consciously has rejected as poor policy. Wisconsin courts therefore would look to New York law to determine the scope and availability of Sybron’s defenses. Under Wisconsin law, if a state’s contractual law is determined to govern a particular contract, that same state’s substantive law also governs the scope of the parties’ contractual relationship. As the Court of Appeals of Wisconsin has stated:
Common sense tells us that the process of construing an agreement includes, in addition to the definition of possible ambiguous terms, the application of the terms to the case in question. This application may require resort to extrinsic sources such as the substantive law. Thus, by indicating the law to be used in construing a contract, the parties effectively involve the substantive law of that state_ We ... can conceive of few instances where it would be reasonable to look to the law of a specific state to define contractual terms but to the law of a second jurisdiction to ascertain the legal effect of the agreement.
Hammel v. Ziegler Fin. Corp., 113 Wis.2d 73, 334 N.W.2d 913, 915-16 (Ct.App.1983). The substantive questions related to Hartford’s and Sybron’s responsibilities under the Hartford policies are therefore governed by the law of the State of New York. See Hystro Prods., Inc. v. MNP Corp., 18 F.3d 1384, 1393 (7th Cir.1994) (waiver and estoppel issues governed by law of state that governs contract); Utica Mut. Ins. Co., 460 N.W.2d at 766 (same). New York law, therefore, governs Sybron’s defenses and their availability.
B. Late Notice
Hartford denies coverage liability on the ground that Sybron’s 22-month delay in notifying it of the Press suit was unreasonable as a matter of law. “Compliance with the notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law, and failure by the insured to comply with such requirements relieves the insurer of liability.” Utica Mut. Ins. Co. v. Fireman’s Fund Ins. Cos., 748 F.2d 118, 121 (2d Cir.1984).[7] Prompt notice allows the insurer to protect itself by investigating the claim, improving the chance of settlement, controlling the litigation, providing a reserve fund, and taking steps to prevent fraud. Unigard Sec. Ins. Co. v. North River Ins. Co., 79 N.Y.2d 576, 584 N.Y.S.2d 290, 292, 594 N.E.2d 571, 573 (1992) (stating policy reasons of notice — occurrence provisions); AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 625-28 (2d Cir.1996) (holding that the same policy reasons underlie notice-ofelaim provisions). Under New York law, a notice provision contained in an insurance agreement mandates “that notice be given within a reasonable time under all the circumstances.” Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 340 N.Y.S.2d 902, 906, 293 N.E.2d 76, 79 (1972). Even a short delay in giving notice is unreasonable as a matter of law if there is no valid excuse for the delay. Fireman’s Fund Ins. Co. v. Schuster Films, Inc., 811 F.Supp. 978, 986 (S.D.N.Y.1993).
We agree with the district court that Sybron’s 22-month delay in notifying Hartford of the Press claim was per se unreasonable. Notice provisions are strictly *-326 enforced in New York, and shorter periods have been held to be unreasonable as a matter of law. See Security Mut. Ins. Co., 340 N.Y.S.2d at 905-08, 293 N.E.2d at 79-80 (19 months); Deso v. London & Lancashire Indent. Co., 3 N.Y.2d 127, 164 N.Y.S.2d 689, 691-93, 143 N.E.2d 889, 891 (1957) (51 days); American Home Assurance Co. v. Republic Ins. Co., 984 F.2d 76, 78 (2d Cir.) (36 days; citing New York cases in which delays of 22, 10, 33, 53, 29, 28, 26 and 13 days were held unreasonable as a matter of law), cert. denied, 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993). Moreover, Sybron has offered no valid excuse for having delayed notice for such a long period of time. Sybron cannot claim that it lacked knowledge of the Press litigation. See Olin Corp. v. Insurance Co. of North America, 966 F.2d 718, 724 (2d Cir.1992) (noting that delay may be excused if insured lacked knowledge of occurrence). Furthermore, any belief on Sybron’s part that another party would bear the responsibility for the loss is insufficient as a matter of law to excuse the dilatory notice. See Heydt Contracting Corp. v. American Home Assurance Co., 146 A.D.2d 497, 536 N.Y.S.2d 770, 772 (1989). Finally, for the reasons set forth in the following paragraphs, the claim is mer-itless that Sybron’s late notice is excused under a waiver, estoppel or bad faith theory because of some action on Hartford’s part.
C. Sybron’s Defenses to Late Notice
Before proceeding to Sybron’s other defenses, we note, see supra note 6, that Sybron’s first defense, that Hartford was not prejudiced by the delay, is no defense at all. As we previously stated, it is well settled that lack of prejudice is not a valid defense in New York to untimely notice. See Unigard Sec. Ins. Co., 584 N.Y.S.2d 290, 594 N.E.2d at 573; Security Mut. Ins. Co., 340 N.Y.S.2d at 904-05, 293 N.E.2d at 78; Olin Corp., 966 F.2d at 723; Utica Mut. Ins. Co., 748 F.2d at 121. Lack of prejudice is no defense regardless of whether the insured breaches a notice-of-occurrenee or notice-of-claim provision. AXA Marine & Aviation Ins. (UK) Ltd., 84 F.3d at 625-28. In this case, Sybron delayed for 22 months before providing Hartford with notice. That inexcusable length of time is unreasonable as a matter of law, and that Hartford suffered no prejudice as a result of the delay is irrelevant.
1.
Sybron next submits that Hartford waived its right to assert untimely notice. In support of this contention, Sybron points to the following facts: (1) Hartford failed to disclaim coverage because of late notice when notified of the Press claims; (2) prior to notice of the claims, Hartford had been “monitoring” the cases through Security;[8] and (3) Hartford negotiated and signed the Settlement Agreement in which it agreed to pay $500,000 toward the Press settlement without ever mentioning its intent to assert late notice.
“In the insurance context, New York law defines waiver as ‘a voluntary and intentional relinquishment of a known right.’ ” New York v. AMRO Realty Corp., 936 F.2d 1420, 1431 (2d Cir.1991) (quoting Albert J. Schiff Assocs., Inc. v. Flack, 51 N.Y.2d 692, 435 N.Y.S.2d 972, 974-75, 417 N.E.2d 84, 87 (1980)). Waiver can be proved by direct or circumstantial evidence that shows that the insurer, through its words or acts, intended to abandon the defense. Id.
Applying these principles to this case, we hold that none of the evidence on which Sybron relies is sufficient, as a matter of law, to support a waiver. Hartford’s lack of response to Sybron’s notice is an equivocal non-act that does not indicate an intent to relinquish the right to assert late notice. In this context,[9] “[a] waiver cannot be inferred *-325 from ... mere silence.” Allstate Ins. Co. v. Flaumenbaum, 62 Misc.2d 32, 308 N.Y.S.2d 447, 454 (N.Y.Sup.Ct.1970) (quoting Titus v. Glens Falls Ins. Co., 81 N.Y. 410, 419 (1880)).[10] Similarly, Hartford’s “monitoring” of the Press litigation is not an act from which we can discern a clear intent to waive the right to disclaim liability. Hartford’s “monitoring” amounts to receiving, 21 months after the claim commenced, copies of a letter between Security and Sybron and other Press-related correspondence. The mere receiving of information in letters from a third party is not an act of the type necessary to sustain a waiver. Notice must come from the insured itself; information from a third party does not satisfy the notification requirement. Heydt Contracting Corp., 536 N.Y.S.2d at 773 (“[I]t is entirely irrelevant whether defendant obtained immediate independent knowledge of the incident (emphasis added); American Home Assurance Co., 984 F.2d at 78 (same). Even if Hartford actually had “monitored” the Press litigation, no waiver would have occurred. Following litigation is not an act that communicates an intent to abandon coverage defenses. Keeping tabs on litigation that may result in a claim being made against an insurer is consistent with an intent to deny coverage; an insurer in such a situation is merely preparing itself should liability be asserted. Finally, Hartford’s participation in the Press settlement did not preclude it from asserting late notice. Its participation in the settlement was expressly conditioned on the ability to raise subsequently the defenses available under the Hartford policies and New York law. Moreover, evidence of communications between the insurer and the insured or of settlement negotiations is insufficient to prove waiver or estoppel. Gilbert Frank Corp. v. Federal Ins. Co., 70 N.Y.2d 966, 525 N.Y.S.2d 793, 795, 520 N.E.2d 512, 514 (1988). In sum, Sybron can point to no acts performed, or words spoken, by Hartford from which a reasonable jury could find a waiver. Consequently, the district court correctly decided that Hartford did not waive its late-notiee defense.
2.
Sybron next maintains that- Hartford is estopped from asserting late notice. In so contending, Sybron invites our attention to statements made by Richard A. Schmalz, a Hartford representative, in a deposition for an earlier case. During that deposition, Schmalz “testified that, in circumstances where an insured faces liability for an injury that occurred over a number of policy periods and which triggered a number of policies ..., the insured was entitled to chose [sic] one of the triggered policy periods and go straight up, vertically, to exhaust the coverage available for that period before pursuing coverage in any other available policy period.” R.35 at 6 para. 14. Sybron maintains that, relying on these statements, it chose to pursue coverage through Security alone instead of through Security and Hartford together. Thus, Sybron blames Schmalz for its failure to give timely notification; as a result, it urges that Hartford be equitably estopped from relying on that defense.
An estoppel “is imposed by [New York] law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party’s words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.” Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 451 N.Y.S.2d 663, 667, 436 N.E.2d 1265, 1269 (1982) (citation omitted).[11] Schmalz’ comments, when viewed against this standard, do not give rise to an estoppel claim. A fair reading of Schmalz’ statements *-324 reveals that he did not assert, impliedly or otherwise, that Hartford would not seek to enforce its policies’ notice provisions against Sybron. Any inference drawn by Sybron to this effect is unreasonable; Sybron simply could not have been misled. Schmalz’ comments merely represent his opinion on the legal effect of having multiple policies that cover a single occurrence. That his statements' embody a mere opinion is apparent from the deposition transcript: He made clear that he “think[s]” that his opinion is “correct” but noted that “[t]here may be excess carriers who would” disagree. R.35, Ex.J at 110. He cautioned Sybron that “[y]ou have to take into account that excess carriers might dispute this determination.” Id. Sybron could not have relied justifiably to its detriment on Schmalz’ equivocal legal opinion. See McAleenan v. Massachusetts Bonding & Ins. Co., 232 N.Y. 199, 133 N.E. 444, 446 (1921). Indeed, even if Sybron had accepted the correctness of Schmalz’ view, the right of an insured to rely initially upon one carrier to meet a claim does not necessarily obviate the need to notify other carriers of their potential liability. As we have noted earlier, New York law recognizes the right of a carrier to receive notice in order to initiate an investigation of the claim, prevent fraud, control the litigation, attempt settlement, and provide for a reserve fund. All of these concerns require timely notification, even if the insured chooses to look initially to one carrier for coverage. Because Sybron could not justifiably have relied upon, or have been misled by, Schmalz’ comments, equitable estoppel does not affect Hartford’s right to assert untimely notice as a coverage defense.
3.
Finally, based on the theory that Hartford breached a duty of good faith, Sy-bron contends that Hartford is not entitled to a return of the $500,000 that Hartford contributed toward the Press settlement.[12] Specifically, Sybron contends that Hartford was required, pursuant to this duty, to inform Sybron, prior to entering into the Settlement Agreement, of Hartford’s intent to raise the late-notice defense. In Sybron’s view, Hartford entered into the Settlement Agreement with the intent to reserve a defense that had been waived, thereby surreptitiously resurrecting the defense. It was bad faith, insists Sybron, for Hartford to enter into the arrangement without informing Sybron that the clause reserving rights and defenses was meant to preserve any right or defense other than the right to a pro rata allocation of coverage among the insurers.
Hartford did not act in bad faith. For the reasons already explained, Hartford simply was not obligated to inform Sybron of its intention to assert the defense of untimely notice. Even if there had been a duty to inform, Sybron should have been on notice that the defense of late notice had been reserved by Hartford. Hartford did not “hide the ball”; the Settlement Agreement makes clear:
SECURITY, HARTFORD and SYBRON expressly reserve all rights and defenses available to them, including the right to seek recovery from SYBRON, each other, or any other insurance carrier, for any sums paid in settlement of the PRESS LITIGATION.
R.35, Ex. G at 2 para. 2. This language reserves “all” defenses and should have alerted Sybron to the possibility of Hartford’s raising a late-notice defense in future litigation. Moreover, Hartford did not surrepti *-323 tiously “resurrect” a waived late notice defense. The defense was not resurrected by the Settlement Agreement because, as we have already held, Hartford’s right to assert untimely notification was never waived. Sy-bron maintains that if it would have known of Hartford’s intention to deny coverage altogether, it would not have entered into the Settlement Agreement. The record demonstrates that any lack of knowledge on Sy-bron’s part must be attributed to its own poor judgment, not to bad faith on Hartford’s part. Consequently, Hartford is entitled to summary judgment on its counterclaim.
Conclusion
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.

. Sybron Transition Corporation is Kerr's parent company.

. Apparently, Security wanted Hartford to share in the defense costs. Sybron asserts that it did not notify Hartford of the Press suits earlier because of statements made to it by Richard Schmalz, one of Hartford's representatives. In an earlier deposition for another case, Schmalz testified that, in his opinion, an insured is entitled, when multiple policies are triggered by an injury that occurred over several policy periods, to choose one policy period and to exhaust the primary and excess coverage for that period before pursuing coverage available for another policy period.

. With minor differences in wording, the Hartford policies condition coverage as follows:
(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable....
(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
R.35, Ex.D; R.44, Ex.l.

. See Urhammer v. Olson, 39 Wis.2d 447, 159 N.W.2d 688 (1968) (adopting the approach); Haines v. Mid-Century Ins. Co., 47 Wis.2d 442, 177 N.W.2d 328, 330-31 (1970) (applying the approach); Utica Mut. Ins. Co. v. Klein & Son, Inc., 157 Wis.2d 552, 460 N.W.2d 763, 765-66 (Ct.App.1990) (same).
Section 188 of the Restatement provides:
(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
(3)If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203.
Restatement (Second) of Conflicts § 188 (1971) (boldface omitted).

. See also Restatement (Second) of Conflicts § 193 & cmt. a (1971) (validity and rights created by insurance contracts are determined by the law of the state that the parties understood to be the principal location of the insured risk; if there is no such location, the law governing the contract is to be determined by the principles set forth in § 188); id. § 188(3) ("If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied ....") (boldface omitted).

. If Sybron were correct, any failure on its part to give timely notice to Hartford would be excused if it could prove that Hartford suffered no material prejudice from the delay. See, e.g., Aetna Cas. & Sur. Co. v. Murphy, 206 Conn. 409, 538 A.2d 219, 223-24 (1988). In contrast, New York’s law provides that timely notice is required, and that the failure to give prompt notice is a defense to coverage, even if the insurer suffered no prejudice as a result of the insured's delay. See. Unigard Sec. Ins. Co. v. North River Ins. Co., 79 N.Y.2d 576, 584 N.Y.S.2d 290, 292, 594 N.E.2d 571, 573 (1992) ("It is settled New York law that ... the insurer need not show prejudice to rely on the defense of late notice.”) (citation omitted); Security Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 340 N.Y.S.2d 902, 904-05, 293 N.E.2d 76, 78 (1972) (same); Olin Corp. v. Insurance Co. of North America, 966 F.2d 718, 723 (2d Cir.1992) ("Under New York law, an insured’s failure to comply with a notice-of-occurrence provision is generally a complete defense even if the insurer was not prejudiced by the untimely notification.”); Utica Mut. Ins. Co. v. Fireman’s Fund Ins. Cos., 748 F.2d 118, 121 (2d Cir.1984) (same).

. Accord Unigard Sec. Ins. Co. v. North River Ins. Co., 79 N.Y.2d 576, 584 N.Y.S.2d 290, 292, 594 N.E.2d 571, 573 (1992); AXA Marine & Aviation Ins. (UK) Ltd. v. Seajet Indus. Inc., 84 F.3d 622, 624-25 (2d Cir.1996); Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc., 822 F.2d 267, 271 (2d Cir.1987).

. The record demonstrates that Hartford did not "monitor" the Press litigation. In the same month that Sybron notified Hartford of the Press litigation, Hartford was sent a copy of a letter from Security to Sybron that requested Sybron to notify Hartford. Thus, Hartford received the first correspondence from Security some 21 months after the Press claims were initiated. Subsequent to this initial letter, Hartford received copies of other materials related to the Press suits.

. An insurer has a statutory duty to disclaim liability for injuries that arise out of accidents that occur within the State of New York. See N.Y. Ins. Law § 3420(d); American Home Assurance Co., 984 F.2d at 79. Dr. Press was injured in Pennsylvania.

. Under New York law, an insurer may be es-topped from asserting late notice if it delayed its disclaimer for an unreasonable amount of time and if the insured was prejudiced as a result. See American Home Assurance Co., 984 F.2d at 79. In this case, Sybron was not prejudiced by Hartford's failure to deny coverage.

. Estoppel thus is to be distinguished from waiver: "While estoppel requires detriment to the party claiming to have been misled, waiver requires no more than the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." Nassau Trust Co., 451 N.Y.S.2d at 668, 436 N.E.2d at 1270-71 (citations omitted).

. Sybron maintains that this duty of good faith emanates from two sources. First, it notes that a duty of good faith and fair dealing is implied in every contract in New York. See Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 502 (2d Cir.1989). As a result, Sybron contends, Hartford owed it a duty of good faith under the Hartford policies.
Second, Sybron insists that an insurer is liable to an insured for bad faith under a tort theory that is related to the parties’ contractual undertaking. See Pavia v. State Farm Mut. Auto. Ins. Co., 82 N.Y.2d 445, 605 N.Y.S.2d 208, 209-12, 626 N.E.2d 24, 26-28 (1993). In Pavia, the Court of Appeals of New York held that, ‘‘in order to establish a prima facie case of bad faith, the plaintiff must establish that the insurer's conduct constituted a 'gross disregard’ of the insured’s interests — that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer.” Id. at 211, 626 N.E.2d at 27 (citation omitted).