OPINION OF THE COURT
Richard A. Dollinger, J.
Seldom does the impact of pre-equitable distribution case law and a decades-old statute ripple into a 2016 decision and give a judge pause. This case is the exception.
In an earlier decision, this court, considering a motion for collection of unpaid arrears in maintenance, held that under the couple’s separation agreement and a later court order, a former husband (the respondent) was obligated to pay his ex-wife (the petitioner) maintenance on a sliding scale, depending on the amount of his income. In reaching that conclusion, the court did not address a claim by the respondent that the petitioner, in failing to file for unpaid maintenance for more than a decade, had waived or abandoned her claims for maintenance.
Under the separation agreement, signed in 1979, it is undisputed that the respondent was required to pay the petitioner non-durational maintenance at the rate of $240 per month. In 1989, the respondent, facing reduced income, moved to modify the maintenance. The court, in a 1989 decision, held that the amount of maintenance to be paid would not be altered. However, in an apparent attempt to give the respondent some relief from cash flow difficulties, the court ordered that he pay maintenance on a sliding scale depending on his cash flow. The court held that if the respondent made less income, he would still be liable for $240 per month, but would pay a lesser amount consistent with his then current income. Arrears based on what he was required to pay under the court *233 decision and the $240 that he had agreed to pay would accrue and be satisfied when he made more income. The court formula provided that if he made less than $10,000 a year, he would pay only $80 per month; if he made more than $10,000, but less than $20,000, he would pay $160 per month; if he made more than $20,000 annually, he would pay at $240 per month and if he exceeded $30,000 annually, he would pay the $240 per month plus $80 more each month to cover any arrears. The court expressly held that it was not “cancelling” arrears, “but merely deferring them to a future payment when his earnings hopefully will be higher than what he’s reported.”
To allow the petitioner to calculate the amount of maintenance due and owing each year, the decision required that the respondent provide biennial financial statements to the petitioner. If he failed to provide the financial statements, then the court directed that he would be liable for all arrears and be required to pay $240 per month regardless of his income. There is no requirement in the court decision that the petitioner request production of the financial statements. The order required the respondent to furnish the statements “advising [the petitioner] under oath of his gross and net income.” During the period covered by the court decision, the respondent did not, for the most part, provide any of the required financial disclosure. He last supplied a financial statement in 2000.[1] In the period from 2000 through February 2016, the respondent paid only $80 per month and never paid any arrears. It is undisputed that the respondent made more than $30,000, at least since 2012.
Under these circumstances, the petitioner sought to enforce the prior order while the respondent moved to dismiss the application. Initially, the respondent argued that because the separation agreement was signed in 1979, part A of section 236 of the Domestic Relations Law—the pre-equitable distribution *234 portion of the statute—governs all the issues related to this claim by the petitioner. The respondent points to the 1989 modification decision in which the court applied the pre-equitable distribution principles to the petitioner’s application to enforce the judgment of divorce and the respondent’s request for modification. However, the application of pre-equitable distribution provisions of the Domestic Relations Law, even if required, is no help to this respondent. As the court noted in 1989, part A of section 236 provided that while courts had the power to modify maintenance, it has no power to annul arrears that accrued before the application unless the defaulting party demonstrated “good cause for the failure to make an application.” The court held that the respondent had not demonstrated “good cause” to justify his failure to make an application for relief before the arrears accrued.
Twenty-seven years later, nothing has changed. The Family Court Act prohibits this court from reducing or annulling any arrears unless the respondent demonstrates good cause for failure to make application for relief from the judgment or order directing payment prior to the accrual of the arrears. (Family Ct Act § 451 [1]; Penziner v Penziner, 123 AD2d 674, 675 [2d Dept 1986] [alimony arrears may not be cancelled unless defaulting party shows good cause, prior to accrual of arrears, for failure to make application for relief from prior judgment or order directing such payment]; see also LiGreci v LiGreci, 87 AD3d 722, 726 [2d Dept 2011].) The respondent in 2016 makes no new argument that he had “good cause” to delay in seeking to modify or annul the maintenance. He simply argues he has no assets and no income, save Social Security. This argument— “I cannot afford to pay”—could have been made any time before the arrears accrued. In reviewing the 1989 transcript, it is apparent that the respondent did not have substantial income, as the court modified the payment schedule with an understanding that the respondent often made less than $30,000 annually. In contrast, the evidence before this court is undisputed that the respondent made slightly more than $30,000 in each year from 2012-2015.
The respondent’s argument that the pre-equitable distribution principles apply further impacts this matter. The respondent suggests that the petitioner’s recovery should be limited to just six years before her application. The petitioner’s recovery in this instance in fact depends on whether the respondent’s failure to pay maintenance is a result of the *235 breach of the agreement or the court order. The underlying claim by the petitioner stems from the failure to pay the maintenance required by the separation agreement. The Court of Appeals in Tauber v Lebow (65 NY2d 596 [1985]), applying pre-equitable distribution rules to a 1970 separation agreement, held that a breach of contract claim under a separation agreement is governed by the six-year statute of limitations in CPLR 213 (2). Furthermore, because the maintenance arrears had not previously been reduced to judgment, the Court of Appeals held that the six-year statute of limitations applied to any claims for unpaid maintenance. (Tauber v Lebow, 65 NY2d at 596.) If the ruling in Tauber v Lebow applies to this pre-equitable distribution separation agreement, the petitioner in this case could only recover for the unpaid maintenance for the last six years. (Chayes v Chayes, 28 AD3d 355 [1st Dept 2006] [six-year statute of limitations applies to breach of separation agreement].) However, the legislature later extended the statute of limitations for “all subsequent actions for support, alimony or maintenance to 20 years from the date of default, regardless of whether the arrears have been reduced to judgment.” (Matter of Dox v Tynon, 90 NY2d 166, 174 [1997].) The broad statement by the Court of Appeals in Dox v Tynon is even broader than the actual language of the statute. CPLR 211 (e) grants a 20-year statute of limitations, but only to claims predicated on orders or judgments for maintenance and not to claims for maintenance based on the breach of a separation agreement. (Matter of Gibbs v Gibbs, 144 AD3d 1669 [4th Dept 2016].) This fine distinction, perhaps lost on many, drastically impacts enforcement of maintenance obligations if an agreement is simply incorporated into a judgment of divorce. As one court noted:
“While the Legislature may have assumed that all maintenance and child support obligations are initially or eventually accorded court-order status by inclusion in subsequent divorce judgments, in fact there are cases such as the one at bar where the support and maintenance obligations are pursuant to a private contract/separation agreement which (for whatever reason) never receives formal judicial sanction by being incorporated into the divorce judgment. Such cases do not appear to be covered by the referenced legislation nor by the holding in Dox v Tynon.” (Werner v Werner, 176 Misc 2d 299, 303 [Sup Ct, Broome County 1998] [holding *236 that maintenance provisions in agreement incorporated, but not merged into divorce decree were governed by six-year statute].)
While CPLR 211 (e) provided for a longer limitations period, it explicitly applies only to orders entered after its effective date of August 7, 1987. (Penrose v Penrose, 17 AD3d 847, 848 n 2 [3d Dept 2005].) In this case, the petitioner seeks to enforce the 1989 court decision and order which modified the terms of the payment of the maintenance, and provided for the disclosure by the respondent of his annual income. Under these facts, the longer statute of limitations in CPLR 211 (e) applies and the petitioner’s claim extends to 20 years. A similar factual scenario is revealed in Roseanne P. v Gustav P. (41 Misc 3d 1227[A], 2013 NY Slip Op 51850[U] [Sup Ct, Westchester County 2013]). In that matter, the couple were divorced in 1981 (when a six-year statute of limitations applied to an enforcement action), and the parties in 2000 entered into a consent order requiring payment of maintenance. When the petitioner sought to enforce the maintenance obligation, the 20-year statute applied because the claim was founded on a court order issued after the 1987 amendment. The same conclusion applies with equal force here.
Without a statute of limitations defense, the respondent argues in the alternative that the petitioner, by failing to move to collect the accumulating arrears in maintenance, has waived or abandoned any claim to maintenance for any period prior to the application. Before examining the status of this doctrine in case law, this court notes that there is no language in the parties’ agreement or the court decision that would permit a waiver if it were signed by both parties, a clause commonly incorporated into current agreements. This court further notes that the petitioner offers no explanation for her failure to demand the financial statements or payment of the maintenance as required by the court order.
In his argument, the respondent looks to somewhat antiquated case law to justify a waiver by the petitioner here. In Matter of Robinson v Robinson (81 AD2d 1028 [4th Dept 1981]) and Albert v Albert (144 AD2d 1016 [4th Dept 1988]), the Appellate Division upheld a finding of a waiver when a party accepted less than full maintenance over an extended period of time. While Albert and Robinson have aged, the Appellate Divisions have not abandoned the notion that a waiver can be found if the recipient does not seek prompt court enforcement of *237 maintenance or expressly declines payments. (Gentile v Gentile, 31 AD3d 1158 [4th Dept 2006]; Matter of Tafuro v Tafuro, 102 AD3d 877 [2d Dept 2013] [mother’s express waiver of her future child support payments was valid and enforceable when contained in a letter to the father].) A waiver of a contractual claim to maintenance—a cost of living adjustment (COLA) in maintenance under a separation agreement—can also be inferred from inaction. (Stassa v Stassa, 123 AD3d 804 [2d Dept 2014] [petitioner failed to enforce COLA language in a separation agreement for 25 years and waiver was found].)
However, more recently, it appears that other New York courts have required more evidence of an intent to waive maintenance before overturning maintenance obligations. The mere fact that the plaintiff delayed in commencing legal proceedings to enforce the support obligation does not itself establish that a waiver occurred. (Rivers v Rivers, 35 AD3d 426, 428 [2d Dept 2006] [defendant failed to demonstrate that the plaintiff had voluntarily relinquished her right to recover maintenance arrears, as he was required to do in order to establish his defense of waiver].) Waiver should not be lightly presumed and must be based on “a clear manifestation of intent to relinquish a contractual protection.” (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [2006] [internal quotation marks omitted].) A waiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence. (Matter of Hinck v Hinck, 113 AD3d 681, 683 [2d Dept 2014]; Denaro v Denaro, 84 AD3d 1148 [2011] [13-year delay in submitting QDRO did not constitute waiver]; Curtis v Curtis, 151 AD2d 945 [3d Dept 1989] [six-year delay in seeking enforcement not a waiver].)
This court declines to find a waiver under these facts. The petitioner’s right to non-durational maintenance under the separation agreement and the court decision is not disputed and any waiver finding would annul the prior court order retroactively in violation of Family Court Act § 451 (1) (maintenance is a form of “other arrears” which cannot be reduced or annulled without “good cause”). Furthermore, the respondent, in suggesting a waiver, cannot point to any prejudice on his part resulting from the petitioner’s failure to seek payment of the entire amount as required. There is no evidence that he justifiably relied upon the petitioner’s words or deeds to his detriment or that the enforcement of the plaintiff’s rights under the court order would work a fraud or *238 injustice upon him. (Matter of Shondel J. v Mark D., 7 NY3d 320, 326-327 [2006]; Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982].)
In that respect, this case resembles Matter of Sarfaty v Recine (37 AD3d 609 [2d Dept 2007]). In that instance, a parent sought to enforce a child support decree and the other parent argued a 12-year delay in seeking the support trumped the claim. The Court held otherwise because there was no evidence that the non-paying parent had suffered any prejudice. It further rejected the non-paying parent’s claim because he had exhibited “recalcitrance” in failing to provide income tax returns for the intervening 12 years. These facts parallel those in this instance and justify a similar conclusion. The respondent, having sustained no prejudice and having failed to fulfil his obligation to provide biennial financial information, cannot invoke equitable remedies to evade his court-ordered obligations.
Laches provides no better argument for the respondent. Since this is an action at law, laches is not applicable. (Stassa v Stassa, 73 AD3d 1157 [2d Dept 2010]; Fade v Pugliani/Fade, 8 AD3d 612, 615 [2d Dept 2004] [laches is not applicable to an action at law, and thus may not bar the former respondent’s causes of action alleging breach of contract and fraud to the extent they seek money damages].) In any event, the respondent failed to show, beyond conclusory allegations, that he was injured or prejudiced by the petitioner’s inaction or delay in commencing the action. (Rivers v Rivers, 35 AD3d 426, 428 [2d Dept 2006] [in the absence of an injury to him, a change in position to his detriment, or other disadvantage to him arising from the plaintiff’s delay in seeking to enforce his maintenance obligation, the Supreme Court properly rejected his laches defense]; see also Roseanne P. v Gustav P., 41 Misc 3d 1227[A], 2013 NY Slip Op 51850[U] [Sup Ct, Westchester County 2013] [former husband’s note telling his spouse that he could not afford court-ordered maintenance was not evidence of prejudice or injury sufficient to justify waiver or laches].)
Finally, in this instance, when weighing any equities, this court cannot overlook the fact that the payment of maintenance in this case arises under a court order. Parties may modify the maintenance provisions in their separation agreements by themselves, without court intervention, but prior court orders may only be modified, if at all, by subsequent court orders. The respondent in this case had numerous opportunities— *239 coextensive with the enforcement rights of the petitioner—to seek modification of the prior court order. The respondent delayed any attempt at modification until this petitioner brought the enforcement action. In this court’s view, the respondent has waived his right to seek annulment of the support and, even if this court held that the equities were evenly divided, the petitioner’s delay in enforcement was as egregious as the respondent’s delay in modification. The respondent now seeks to profit as a result of his failure to follow the original order’s requirement for biennial financial disclosure. The underlying court decision was not designed to transform the petitioner’s right to maintenance into a game of “hide-and-go-seek,” in which the respondent could thwart the court’s order by hiding his income and making his former spouse “go seek” it through court action. The legislature’s creation of a 20-year statute of limitations for collecting arrears in support orders— when placed “side-by-each” with the command of Family Court Act § 451 (1)—reflects a strong state policy that court-ordered support in matrimonial matters should be rigorously enforced and seldom overturned. (Roseanne P. v Gustav P., 41 Misc 3d 1227[A], 2013 NY Slip Op 51850[U] [Sup Ct, Westchester County 2013] [20-year statute applies to maintenance obligations contained in court order].)
The petitioner also sought, through her application, an order requiring the respondent to produce his income tax returns for the last 20 years. She does not need them. Under the court order, if the respondent failed to produce the biennial financial statements, the petitioner was entitled to $240 per month, regardless of the respondent’s income. Therefore, her request for tax returns, which would not alter the respondent’s financial obligations, is denied.
Based on these conclusions, the petitioner may enforce all her rights under the court order for a 20-year period before the date of the filing of this action. For each six-month period after the respondent failed to provide a financial statement, the maintenance payment should be $240. The respondent is entitled to a credit for any maintenance payments documented during these periods of time and the final amount owed should take into account any credits owed to the respondent. This court will allow the respondent and his counsel to provide evidence of any payments in the applicable period and the petitioner’s counsel will, upon production of such proof, credit the respondent for those payments. The respondent violated *240 the court order when he stopped providing the financial statements, paid less than $240 per month and then when he discontinued the payments. These actions are wilful and support a finding of contempt. The contempt may be purged by the prompt calculation of the arrears, no later than January 15, 2017, together with interest at the statutory rate from the date of each missed or “short” payment and payment of the arrears and accrued interest in full by March 31, 2017,[2] and payment of $3,000 in legal fees and the costs of disbursements for the petitioner’s counsel by the same date. Barring a purging of the contempt consistent with this order, the resulting sums owed to the petitioner shall be reduced to a judgment, payable to the petitioner, for maintenance and support.
If the respondent fails to purge the contempt as dictated above and within the time prescribed, the petitioner shall be granted an income execution enforceable against the respondent’s Social Security benefits or any other income or asset as permitted by law and may apply for any further relief pursuant to any appropriate statute.

. The respondent claims that he had no income or assets between 1996 and 2011 and, therefore, he had no income information to give the petitioner. This court will not even contemplate how the respondent paid his maintenance during this time, when he had no income or assets and he provides no description of how he paid these amounts. The fact that he had no income or never filed tax returns is irrevelant: the court order required him to provide sworn biennial financial information, not tax returns. Regardless of whether he made any income, he was still required to provide the financial information or he could have sought court relief from the disclosure provision. He cannot argue with a straight face that his lack of income relieved him from the court order to provide biennial financial statements.

. The petitioner is also awarded prejudgment interest because in enforcement proceedings, an award of prejudgment interest computed from the respective dates on which each support payment was due, is mandatory where the default was willful, in that the defaulting party knowingly, consciously and voluntarily disregarded the obligation under a lawful court order. (Family Ct Act § 460 [1]; Matter of Locicero v Mosca, 136 AD3d 921 [2d Dept 2016].)