■ SARBRO: VII, Doing Business as PARCEL 5A ASSOCIATES, Respondent, v CITY OF BINGHAMTON, Appellant. [653 NYS2d 447] —Peters, J. Appeal from an order of the Supreme Court (Monserrate, J.), entered October 11, 1995 in Broome County, which, *inter alia*, granted plaintiff's cross motion for partial summary judgment.

Plaintiff and defendant entered into a 10-year lease agreement on April 30, 1985 regarding a hotel and conference center (hereinafter the hotel) which was to be constructed on the defendant's land.[1] The financing for the hotel was predominantly derived from Federal funds which included a $7.3 million loan from the Department of Housing and Urban Development (hereinafter HUD) (commonly known as a section 108 loan). Under such program, defendant would borrow the money from the Federal government for plaintiff's benefit and then loan it to plaintiff. Hence, pursuant to their lease agreement, plaintiff's rent consisted of various components, one of which was termed the section 108 rent which mirrored the estimated principal amount of defendant's section 108 loan on the same

1. The lease was later modified by an agreement dated May 8, 1989.

terms as it was required to repay HUD.[2] According to its terms, by September 1995, both defendant's repayment schedule of its section 108 loan and plaintiff's schedule of section 108 rent would require a principal payment of approximately $6.75 million.

In 1992, representatives of defendant advised plaintiff that HUD would allow existing section 108 loans to be refinanced and amortized over a longer period of time. Hence, pursuant to an ordinance, dated February 7, 1994, approved by the defendant's City Council, noting, *inter alia*, that plaintiff "has demonstrated that the operations of the Binghamton Regency Hotel are unable to match its obligations to pay [the section 108] rent * * * [and that plaintiff] has requested * * * a modification of its obligations * * * and * * * [that] approval of [HUD] is required prior to a modification of the Section 108 Rent", defendant was authorized to enter into a letter agreement, dated February 10, 1994 (hereinafter the 1994 Agreement), with plaintiff. The 1994 Agreement noted the ordinance adopted by the City Council, along with its terms, and then set forth an outline of all the terms and conditions it sought in connection with the modification of the section 108 rent, which included a 20-year amortization schedule. After specifically detailing the rent modification clause, among other relevant terms, paragraph 7 (d) of the 1994 Agreement's "COMMITMENT TERMS AND CONDITIONS" stated: "This commitment is contingent upon * * * [HUD's] approval of the proposed restructuring of the Section 108 rent as hereinbefore provided. If such approval is not obtained, [defendant], at its sole option, may cancel this commitment without further obligation."

As authorized by the City Council and as required by the 1994 Agreement, an application was submitted to HUD for its approval of such restructuring on those terms and conditions outlined in the 1994 Agreement, which was annexed to its application. On or about August 1, 1994, HUD's Assistant Secretary for Community Planning and Development advised defendant, by letter, that the application was approved. Approximately two weeks thereafter, defendant received interim promissory notes from HUD for the restructured section 108 loan. However, these notes had a different total principal amount and payment schedule that varied greatly

2. The other two components were (1) base rent equal to the Urban Development Action Grant of $3.3 million granted to defendant, plus 6% interest, payable in quarterly installments over the term of the lease, and (2) supplemental rent equal to 30% of the net cash flow from the hotel, after adjustments.

from the 1994 Agreement.[3] Most importantly, the notes were based upon a 10-year repayment of principal rather than the 20-year amortization that the parties agreed to in the 1994 Agreement.

Defendant contends that its HUD consultant reviewed these interim notes and amortization schedules and advised it that the notes should be signed. It contends that no one was advised, at that time, that the repayment terms were different than those requested in its application detailing the 1994 Agreement. Defendant's Mayor therefore signed the notes and returned them to HUD. The next day, the Assistant Director of defendant's Office of Economic Development sent plaintiff, upon its request, a copy of the congratulatory letter. Defendant claims that it did not yet inform plaintiff of the discrepancy between the interim notes signed and the terms of the 1994 Agreement because it was unaware, at such time, of the discrepancy.

On or about September 16, 1994, after receiving a proposed new lease incorporating a significantly different payment schedule for the section 108 rent than that reflected in the 1994 Agreement, plaintiff requested an explanation. It was then that defendant contended that it first became aware of the discrepancy. It was later advised, through its consultant, that the terms and conditions of these interim notes, notwithstanding signature, could be changed by HUD for the issuance of new notes consistent with defendant's application. Seeking such reissuance, defendant simultaneously attempted to convince plaintiff to pay more section 108 rent than that which was detailed in the 1994 Agreement. When both attempts failed, plaintiff commenced this action to enforce the 1994 Agreement. Defendant contended that the 1994 Agreement never became effective because the contingency that HUD approve the debt restructuring as reflected in the 1994 Agreement was never satisfied.

Each of the parties then sought, *inter alia*, summary judgment regarding the viability of the 1994 Agreement. Upon Supreme Court's declaration that the 1994 Agreement was valid and enforceable since defendant waived its right to cancel, this appeal ensued. We now reverse.

Based upon the documentary evidence and plaintiff's own affidavits, we find a continuing intent, from the inception of the parties' relationship, that the section 108 rent was to reflect

3. The notes required payment of almost $3 million more than plaintiff was to pay pursuant to the 1994 Agreement.

the same terms and conditions of the section 108 loan from HUD to defendant. This intent was further reflected in the 1994 Agreement where defendant reserved to itself the right to cancel if HUD did not approve of the refinancing proposal detailed in its application. While we acknowledge that the right to cancel was solely reserved to defendant and, as the recipient of such benefit, it could waive such condition (*see, Scalia v Glielmi*, 200 AD2d 614), unlike Supreme Court we do not find that it intentionally relinquished such right by its act of signing the notes or by sending plaintiff a copy of the approval letter (*see, Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184; *Orange Steel Erectors v Newburgh Steel Prods.*, 225 AD2d 1010, 1012). The fact that defendant inserted HUD's amortization schedule rather than a schedule reflecting the 1994 Agreement into the proposed lease with plaintiff does not, in our opinion, indicate that defendant was fully aware of such discrepancies and fully intended to accept the burden of HUD's proposed new schedule instead. With the issue of waiver unresolved by this record, coupled with the letters by defendant to HUD requesting a correction of its error, we find that an award of summary judgment was premature.

We further find no merit to defendant's contention that plaintiff's continued negotiation of the repayment terms after HUD refused to reissue notes reflecting their 1994 Agreement constituted a waiver of their right to assert the validity of the 1994 Agreement. Pursuant to the terms of the 1994 Agreement, plaintiff was bound to such terms unless HUD did not accept the proposed terms of the restructuring. It was only defendant, not plaintiff, who had, "at its sole option", the right to cancel this agreement if such approval was not obtained.

As to all other issues raised, including the propriety of an award of summary judgment to defendant, we find them without merit due to a lack of proof.

Mikoll, J. P., Crew III, White and Yesawich Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiff's cross motion for partial summary judgment; cross motion denied; and, as so modified, affirmed.