OPINION OF THE COURT
Vito C. Caruso, J.
In these two CPLR article 78 proceedings, petitioner seeks: (1) to compel respondents to issue a tax refund for tax year 1998, (2) to hold them in contempt for failing to do so, and (3) to consolidate the two proceedings. Respondents oppose the article 78 relief and the contempt application and, in addition, respondent County of Schenectady and its named representatives (hereinafter collectively referred to as the County) cross-move to dismiss the contempt portion. Petitioner does not oppose the County’s motion and it is accordingly granted. No opposition has been raised to consolidation and this part of the relief requested is also granted.
Facts
These proceedings are, in essence, a continuation of tax certiorari litigation involving these parties relative to tax years 1997 and 1998 and, as such, an understanding of what transpired during that litigation is necessary to an understanding of these proceedings. In July 1997, petitioner commenced a tax certiorari proceeding challenging its 1997 tax assessment. Respondents Town of Rotterdam (the Town) and Schalmont Central School District (the School District) were named as party respondents. In August 1997, petitioner served the School District with a verified income and expense statement (the 1997 I&E Statement). The School District did not timely request an audit of the 1997 I&E Statement. In July 1998, petitioner commenced a RPTL article 7 proceeding challenging its 1998 tax assessment and, in September 1998, served the School District with its income and expense statement for the 1998 proceeding. This time, the School District did timely request an audit. Before that audit occurred, however, the Town moved by order to show cause to consolidate the 1997 and 1998 proceedings (among other things). During oral argument on the order to show cause, the court indicated that it was inclined to grant consolidation. At this point, petitioner’s counsel stated that he would like to withdraw the 1998 proceeding. Neither the Town nor the School District opposed this request. The court specified that the withdrawal was to be “with prejudice,” all parties agreed and petitioner thereafter submitted a proposed order which incorporated the “with prej *216 udice” language. This order was signed on February 25, 1999. Thereafter, petitioner notified the Town and the School District that, given the withdrawal of the 1998 proceeding, the previously scheduled audit for 1998 would be canceled.
At some point after the February 25, 1999 order was signed, a dispute erupted about what effect, if any, the “with prejudice” withdrawal of the 1998 proceeding would have on any settlement that may be reached in the ongoing 1997 proceeding, in particular, whether and to what extent RPTL 727 (1) would apply. RPTL 727 (1) provides, in pertinent part: “Except as hereinafter provided * * * where an assessment being reviewed pursuant to this article is found to be unlawful, unequal, excessive or misclassified by final court order or judgment, the assessed valuation so determined shall not be changed for such property for the next three succeeding assessment rolls prepared on the basis of the three taxable status dates next occurring on or after the taxable status date of the most recent assessment under review in the proceeding subject to such final order or judgment.”
At the time, petitioner maintained that the withdrawal would have no effect whatsoever. According to it, RPTL 727 (1) would apply and, under its terms, any assessment reduction determined in the 1997 proceeding would automatically carry over to the three ensuing years (1998, 1999 and 2000). The Town and the School District disagreed. The School District argued that by withdrawing the 1998 proceeding with prejudice, petitioner waived or was estopped from obtaining any assessment reduction for 1998. The Town argued that petitioner’s voluntary withdrawal of the 1998 proceeding with prejudice was tantamount to a final disposition on the merits and, as such, constituted the most recent assessment under review within the meaning of RPTL 727 (1) with the result that RPTL 727 (1) would not apply to any judgment entered in the 1997 proceeding.
While an attempt was made by the School District to bring this issue to the court via a motion to resettle the February 25, 1999 order, before that motion was decided, the parties entered into a stipulation settling the 1997 proceeding. In the stipulation, the School District agreed to withdraw the motion, but “without prejudice to any rights which any party has with respect to the 1998 proceeding.”
In the settlement agreement, the parties expressly stipulated that the 1997 tax assessment of $2,723,400 was excessive and agreed to reduce it to $2,041,200. They further stipulated as follows:
*217 «2 * * * that the assessment rolls heretofore made and dated in the years 1998 * * * and 1999 * * * were based upon the aforesaid excessive assessment for 1997, the most recent assessment under review and, as required by law, the same shall be corrected to $2,041,200, and that the assessment to be made in the year 2000 * * * shall likewise be $2,041,200; and it is
“3. further stipulated that all excess taxes paid on the basis of the assessment for 1997, the most recent year under review, and herein stipulated to be excessive shall be refunded to Rotterdam Square by all taxing units within 60 days following service of an attorney certified copy of the order reducing the 1997 assessment. Adi other refunds ultimately required by law for subsequent years by reason of the correction of such said excessive assessment of 1997, the most recent assessment under review, shall be paid within sixty (60) days after audit of Petitioner’s claim or demand therefor following the service of an attorney certified copy of this order made following payment of such taxes * * * and it is * * *
“5. further stipulated, that the Court will grant an Order in the form annexed hereto determining that the 1997 assessment, the most recent year under review, is excessive, and directing that the reassessment for the year under review and the three (3) following years shall be reduced, corrected and assessed at $2,041,200 and that this Stipulation shall be implemented.”*
An order and judgment based upon the parties’ stipulation was signed by the court on March 7, 2000. Thereafter, petitioner alleges that the Town, School District and County refunded excess taxes paid on the 1997 and 1999 assessments, but failed, after due demand, to refund excess taxes for 1998. This proceeding ensued.
Article 78 Relief
In support of its claim for a refund of the 1998 taxes, petitioner argues that in the stipulation, the Town and the School District expressly agreed to reduce petitioner’s 1998 assessment to the level set for 1997 and, under RPTL 726, the *218 legal effect of this unambiguous agreement is that petitioner is entitled to a refund for excess taxes paid. In opposition, the School District argues principally that petitioner’s voluntary discontinuance of the 1998 proceeding with prejudice constituted a judicial determination that the 1998 assessment was correct and, as a result, the reduced 1997 assessment cannot be carried through to 1998 under RPTL 727. Alternatively, it argues that even if the reduced 1997 assessment can be carried through to 1998, petitioner waived its RPTL 727 right to a refund for 1998, either by discontinuing the 1998 proceeding with prejudice or by failing to pay the 1998 taxes under protest. In addition to the above, the Town argues that petitioner should be estopped from seeking a refund due to its voluntary withdrawal of the 1998 proceeding.
In this court’s view, respondents are attempting to make this matter more complicated than it really is. The salient facts are simply stated: the parties’ stipulation of settlement occurred in the context of the 1997 proceeding; at no time did petitioner expressly waive its right to the application of RPTL 726 or 727 in the 1997 proceeding; and in the stipulation, the parties clearly and unambiguously applied RPTL 727 by agreeing to set the 1998, 1999 and 2000 assessments at the reduced 1997 level.
When viewed from this perspective, the shortcomings of respondents’ arguments become apparent. First of all, applying RPTL 727 to the 1997 stipulation and the order will not, as the School District contends, result in two assessments for 1998. Even if the court accepts respondents’ argument that petitioner’s voluntary withdrawal of the 1998 proceeding was the equivalent of a final adjudication as to the correctness of the 1998 assessment, the fact of the matter is that after the 1998 proceeding had been withdrawn, respondents voluntarily entered into a stipulation of settlement in the 1997 proceeding in which they, among other things, clearly and unambiguously agreed to reduce the 1998 assessment to the 1997 level. The result? There are not two assessments for 1998, but only one— the one respondents agreed to in their subsequent stipulation and in the order and judgment ultimately entered thereon.
Nor is the court persuaded that petitioner inferentially waived its rights under RPTL 726 and 727 in the 1997 proceeding by its “with prejudice” withdrawal of the 1998 proceeding or that it is estopped from obtaining a refund as a result thereof. It is of note initially that the defenses of waiver and equitable estoppel are affirmative defenses and, like all affir *219 mative defenses, are themselves waived if not set forth in a responsive pleading (see, Kromer v Kromer, 177 AD2d 472 [2d Dept 1991]; 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 85, at 126-127). Neither of these defenses was raised in the answers of the Town, the School District or the County. In any event, neither defense is made out on these facts.
Waiver is defined as the voluntary and intentional relinquishment of a known legal right or advantage (Black’s Law Dictionary 1574 [7th ed]). While waiver by implication can occur, it is not lightly presumed, but must be established clearly, unmistakably and without ambiguity (see generally, 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 80, at 118-120). It will not be inferred from a doubtful or equivocal act and cannot be inferred from mere silence, unless there is a duty to speak (Bank of N. Y. v Murphy, 230 AD2d 607, 608 [1st Dept 1996], lv dismissed 89 NY2d 1030). Here; no such clear, unmistakable waiver has been established. At best, the record shows that petitioner, for tactical reasons, offered to withdraw the 1998 proceeding. While both respondents were represented by competent counsel, neither saw fit to address the effect the withdrawal would have on application of RPTL 727 in the ongoing 1997 proceeding and, under the circumstances, it simply cannot be said that petitioner had a duty to speak to that issue.
An estoppel “ ‘rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury’ ” (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [internal quotations omitted], quoting Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448). Here, as noted above, there is no indication in this record that petitioner ever agreed, explicitly or implicitly, to give up its RPTL 726 or 727 rights in the 1997 proceeding.
Respondents’ remaining arguments require little discussion. The court is unpersuaded by respondents’ contention, raised largely at oral argument, that the “with prejudice” language has to “mean something” and unless it is construed as a waiver of petitioner’s RPTL 727 or 726 rights, it has no meaning whatsoever. Petitioner’s “with prejudice” withdrawal of the 1998 proceeding did indeed mean something — it meant that petitioner gave up the RPTL 727 right to have any reduced assessment carry over to 2001. Finally, there is no merit to the School District’s claim that petitioner’s failure to pay the 1998 taxes “under protest” somehow renders RPTL 727 (1) inapplicable to that tax year.
*220 In sum, when the prevailing and applicable law, i.e., RPTL 726, is applied to the simple and uncontroverted facts of this case, the result is clear — respondents are required to pay petitioner a refund for 1998. Accordingly, that part of petitioner’s petition which seeks mandamus to compel is granted.
Contempt
Petitioner’s contempt motion is denied. Based upon a review of the papers and the parties’ statements during oral argument, it is apparent that the failure of the Town and the School District to refund the 1998 taxes is the result of an honest dispute about the effect of the “with prejudice” withdrawal of the 1998 proceeding on the applicability of RPTL 726 and 727 in the 1997 proceeding.
Accordingly, for the foregoing reasons, it is ordered that the two above-captioned proceedings are hereby consolidated and the consolidated caption shall read:
In the Matter of the Application of
ROTTERDAM SQUARE,
For a Judgment in the Nature of Mandamus under Article 78 of the CPLR to Compel the Refund of Taxes Illegally Assessed, Collected and Ordered to be Refunded, and for a Judgment under Judiciary Law Article 51 Holding Respondents in Contempt of Court, and Fining them for Failure to Comply with the Order and Judgment of the Court dated March 7, 2000,
Petitioner,
-against-
THE TOWN OF ROTTERDAM; JOSEPH SIGNORE, in his capacity as the Supervisor of the Town of Rotterdam; PATRICK ARAGOSA, in his capacity as Comptroller of the Town of Rotterdam; EUNICE ESPOSITO, in her capacity as Clerk of the Town of Rotterdam; THE SCHALMONT CENTRAL SCHOOL DISTRICT; THE BOARD OF EDUCATION OF THE SCHALMONT CENTRAL SCHOOL DISTRICT; JAMI-ANN KEITH, in her capacity as President of the Board of Education of the Schalmont Central School District; PATRICIA WILLIAMS, in her capacity as Treasurer of *221 the Schalmont Central School District; THE COUNTY OF SCHENECTADY; ROBERT D. McEVOY, in his capacity as Manager of the County of Schenectady; GEORGE DAVIDSON, in his capacity as Commissioner of Finance of the County of Schenectady; and ROBERT ZYCH, in his capacity as Director of Treasury Systems of the Schenectady County Finance Office,
Respondents.
and it is further ordered and adjudged that the portion of petitioner’s petition which seeks to compel respondents to refund taxes to petitioner for tax year 1998 is granted, without costs, and that respondents, upon receipt of a copy of this decision/order with notice of its entry, issue a refund to petitioner for tax year 1998 as specified in this court’s March 7, 2000 order and judgment; and it is further ordered that the cross motion of respondents County of Schenectady; Robert D. McEvoy, in his capacity as Manager of the County of Schenectady; George Davidson, in his capacity as Commissioner of Finance of the County of Schenectady; and Robert Zych, in his capacity as Director of Treasury Systems of the Schenectady County Finance Office, is hereby granted and the portion of petitioner’s petition which seeks to hold these respondents in contempt of court is hereby dismissed, without costs; and it is further ordered and adjudged that the portion of petitioner’s petition which seeks to hold the remaining respondents in contempt of court is denied, without costs.

 A footnote appears at the end of the third paragraph of the stipulation. It states: “The parties hereto acknowledge that there is no dispute with respect to the refunds for 1997 and 1999, and it is fully anticipated that said refunds will be paid within the 60 day time period specified. The intent of this paragraph is to accommodate a potential dispute that may arise with respect to a refund for 1998.”