Inferno Restaurant and Pizzeria, Inc., Plaintiff,

against
SW Michaels Pizzeria, Inc. and STEPHEN MICHAELS, Defendants.


901262-19

Jackson Lewis, P.C.
Attorneys for Plaintiff
(Benjamin F. Neidl, of counsel)
677 Broadway, 9th Floor
Albany, New York 12207
Bartlett, Pontiff, Stewart & Rhodes, P.C.
Attorneys for Defendants
(Gregory J. Teresi, of counsel)
P.O. Box 2168
One Washington Street
Glens Falls, New York 12801-2168


Richard M. Platkin, J.

Pending before the Court is a motion for summary judgment in lieu of complaint, made pursuant to CPLR 3213, by plaintiff Inferno Restaurant and Pizzeria, Inc. ("Inferno"). Plaintiff seeks to recover the sum of $69,543.97, together with prejudgment interest and attorney's fees, [*2]pursuant to a note and guaranty given in connection with the purchase of a pizzeria. Defendants seek to oppose the motion through untimely opposition papers.
BACKGROUND
Inferno owns and operates several pizzerias in the Capital District (see NY St Cts Electronic Filing [NYSCEF] Doc No. 5 [Riggione Aff.], ¶ 5). Effective April 1, 2018, Inferno sold its pizzeria business at 2374 Route 9, Malta, New York to defendant SW Michaels Pizzeria, Inc. ("SWMP") (see id., ¶ 6; see also NYSCEF Doc No. 8 [Asset Sale Agreement]). The total purchase price was $150,000, of which one-half was paid at (or prior to) the closing (see Riggione Aff., ¶ 7; Asset Sale Agreement, § 2).
Defendant SWMP executed and delivered to plaintiff a promissory note for the $75,000 balance of the purchase price (see NYSCEF Doc No. 6 [Note]), and defendant Stephen Michaels unconditionally guaranteed repayment of the Note (see NYSCEF Doc No. 7 [Guaranty]). Inferno also took a security interest in the assets sold to SWMP (see NYSCEF Doc No. 9 [Security Agreement]), which it perfected by filing a UCC-1 financing statement with the Department of State on April 6, 2018 (see NYSCEF Doc No. 10 [filed UCC-1]).
Under the Note, SWMP was required to make monthly installment payments of $1,442.75 commencing on May 1, 2018 and continuing until April 1, 2023, at which time the Note would become payable in full (see Note). According to Nicholas Riggione, who is the owner and president of Inferno, SWMP made the first six payments, but has failed to make the monthly payments due on and after November 1, 2018 (see Riggione Aff., ¶¶ 13-15).
Under the Note, Inferno has the right to declare the entire unpaid balance to be immediately due and payable upon SWMP's failure to make any monthly payment, subject to a 10-day cure period (see Note, § 4). Further, SWMP and "all guarantors" waived "presentment for payment, demand, . . . notice of nonpayment, notice of intention to accelerate maturity [and] notice of acceleration of maturity" (id., § 5; see also Guaranty [unconditional continuing guaranty that "requires no notice to . . . guarantor"]). Through its moving papers, "Inferno declares the entire outstanding principal and interest of the Note to be due and owing" (Riggione Aff., ¶ 17).
According to Inferno, the total amount of outstanding principal and interest as of March 1, 2019 is $69,543.97 (see id., ¶¶ 18-19). In addition, Inferno seeks prejudgment interest from March 1, 2019, together with an award of attorney's fees against Michaels pursuant to the terms of the Guaranty. Finally, plaintiff seeks confirmation that the judgment lien resulting from this proceeding, to the extent levied upon the collateral described in the Security Agreement, relates back to the filing of the UCC-1.
In an affidavit in opposition that was filed on May 1, 2019 — five days beyond the April 26, 2019 deadline — Michaels, who is the president of SWMP, contends that Inferno "acted in bad faith [and] breached multiple contractual obligations" (NYSCEF Doc No. 17 [Michaels Aff.], ¶¶ 3-4). Michaels acknowledges executing the Note, Guaranty and Security Agreement (see id., ¶ 5), and he does not deny SWMP's default, but Michaels does contend that Inferno breached its obligations under the parties' agreements in three material respects.
First, defendants contend that plaintiff "promised to spend three weeks training [Michaels] and [his] staff in the operation of the business" (id., ¶ 7). Despite numerous requests, plaintiff allegedly failed to do so, which is said to have forced SWMP to begin to operate the [*3]business without the proper preparation or training (see id., ¶ 8).
Second, defendants contend that Inferno was obliged under a Service Mark License Agreement (see Michaels Aff., Ex. E) to provide SWMP with copies of the recipes used at the pizzeria (see Michaels Aff., ¶ 9). According to Michaels, Inferno failed to provide SWMP with all of the pizzeria's recipes (see id.).
Finally, defendants assert that "[p]laintiff made assurances verbally and in Section 11 of the Asset Sale Agreement that there were no violations of any law or regulation pending against [Inferno] or the assets" (id., ¶ 10). Michaels claims to have "learn[ed] that these assurances were false, and the Department of Health was preparing [to] issue violation notices and levy fines against [Inferno] for numerous public health violations" (id., ¶ 11). SWMP allegedly incurred $75,000 in renovation expenses after Michaels was informed by a Department of Health ("DOH") inspector that the pizzeria was "'about to receive one of the highest fines in Saratoga County history as a result of the numerous DOH violations'" (id., ¶ 12; see Ex. F [Summary Inspection Report]).
Defendants maintain that Inferno's material breaches of contract caused Michaels to close the pizzeria (see id., ¶¶ 13-14). Defendants further assert that, prior to closing the pizzeria, they asked plaintiff if it would be willing to take the business back, citing the $75,000 in improvements, but plaintiff refused (see id., ¶ 15).
In reply, Inferno tenders several legal defenses to defendants' claims of material breach. In addition, Riggione submits a reply affidavit disputing the factual allegations made by Michaels (see NYSCEF Doc No. 31 [Riggione Reply Aff.]). 
With respect to training, Riggione avers that training was provided to Michaels for over a period of about four or five weeks in June and July of 2018 (see id., ¶ 6). During this period, Michaels was trained in all aspects of the pizzeria business (see id.). In addition, Inferno claims to have conducted a variety of other training for SWMP's staff (see id.). According to Riggione, Inferno never received any complaints about the training provided to defendants (see id.).
As to the recipes, Riggione flatly denies defendants' allegations and insists that SWMP was, in fact, provided with copies of "all of our recipes" (id., ¶ 7). Riggione further observes that he never received any complaint from defendants about missing recipes (see id.).
Riggione next asserts that there were no pending DOH violations as of the date of the parties' agreements (see id., ¶ 8). He observes that the Summary Inspection Report concerns a single inspection on March 22, 2017, almost one year prior to the parties' execution of the Asset Sale Agreement on February 27, 2018 (see id.). Riggione further avers that of the 12 violations cited on the report, five were corrected at the time of inspection, and the remaining items, which consisted primarily of minor sanitation-related issues, were remedied by the April 5, 2017 deadline established by DOH without the imposition of penalties (see id.). Riggione also states that defendants never complained to Inferno about any health code issues (see id.).
Finally, Riggione explains that he refused defendants' invitation to take back the pizzeria based on his belief that the business had been damaged by defendants' poor business decisions (see id., ¶¶ 13-17). Riggione further avers that the pizzeria was under the new ownership of a third party as of March 28, 2019 (see id., ¶ 18), notwithstanding Inferno's security interest in the pizzeria's assets.
ANALYSIS
On a motion for summary judgment in lieu of complaint pursuant to CPLR 3213, a plaintiff "establishe[s its] prima facie entitlement to judgment as a matter of law by demonstrating the existence of the promissory note, executed by the defendant, containing an unequivocal and unconditional obligation to repay, and the failure by the defendant to pay in accordance with the note's terms" (Kim v Il Yeon Kwon, 144 AD3d 754, 755 [2d Dept 2016]; see Craven v Rigas, 71 AD3d 1220, 1222-1223 [3d Dept 2010], lv denied 14 NY3d 713 [2010]).
The Note and Guaranty sued upon herein are instruments "for the payment of money only" (CPLR 3213; see Bloom v Lugli, 81 AD3d 579, 580 [2d Dept 2011] ["If an instrument contains an unconditional promise to pay a sum certain over a stated period of time, it is considered an instrument for the payment of money only" (citations omitted)]; Smith v Shields Sales Corp., 22 AD3d 942, 944 [3d Dept 2005]; see also Nissan Motor Acceptance Corp. v Scialpi, 83 AD3d 1020, 1021 [2d Dept 2011]). Further, defendants acknowledge the authenticity of the Note and Guaranty, and they do not deny plaintiff's allegation that SWMP has been in default of its obligations under the Note since November 2018. Nor do defendants challenge plaintiff's computation of the amounts due under the Note and Guaranty.
As stated above, defendants oppose the motion on the basis of allegations that plaintiff materially breached the parties' agreements in three respects: (1) failing to provide training; (2) failing to supply all of the recipes; and (3) providing false assurances that there were no violations of any law or regulation pending against the pizzeria. Plaintiff responds principally with the argument that defendants waived these defenses by electing to hold the pizzeria business for nearly one year without notifying Inferno of any of the claimed breaches of contract and then selling the business to a third party in March 2019.
Waiver is the voluntary and intentional relinquishment of a known right (see Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982]). "A waiver . . . may be accomplished by express agreement or by such conduct or a failure to act as to evince an intent not to claim the purported advantage" (Hadden v Consolidated Edison Co. of NY, 45 NY2d 466, 469 [1978]). But a waiver "is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence" (Peck v Peck, 232 AD2d 540, 540 [2d Dept 1996]). Rather, there must be proof that there was "a voluntary and intentional relinquishment of a known and otherwise enforceable right" (id.).
The related "doctrine of election of remedies generally prevents a party that has chosen to assert one of two inconsistent rights from later seeking to vindicate the alternative right" (Luitpold Pharm., Inc. v Ed. Geistlich Söhne A.G. Für Chemische Industrie, 784 F3d 78, 96 [2d Cir 2015]). "When a party materially breaches a contract, the nonbreaching party must choose between two remedies: it can elect to terminate the contract or continue it. If it chooses the latter course, it loses its right to terminate the contract because of the default" (Awards.com v Kinko's, Inc., 42 AD3d 178, 188 [1st Dept 2007], affd 14 NY3d 791 [2010]; see Strasbourger v Leerburger, 233 NY 55, 59 [1922] [party cannot "at the same time treat the contract as broken and as subsisting. One course of action excludes the other."]; Inter-Power of NY v Niagara Mohawk Power Corp., 259 AD2d 932, 934 [3d Dept 1999] ["when one party breaches an executory contract, the adverse party has a choice — to treat the entire contract as broken and sue immediately for the breach or reject the proposed breach and continue to treat the contract as valid"]).
"But New York law does not treat as inconsistent the right to continue to perform and to accept performance under a contract (on the one hand) and the right to sue for damages based on a breach (on the other)" (Luitpold Pharm., 784 F3d at 934). "A party to an agreement who believes it has been breached may elect to continue to perform the agreement and give [timely] notice [of breach] to the other side rather than terminate it" (Capital Med. Sys. v Fuji Med. Sys., U.S.A., 239 AD2d 743, 746 [3d Dept 1997]). Thus, where "performance is continued and such timely notice is given, the nonbreaching party does not waive the right to sue for the alleged breach" (Albany Med. Coll. v Lobel, 296 AD2d 701, 702 [3d Dept 2002]; see Syracuse Orthopedic Specialists, P.C. v Hootnick, 42 AD3d 890, 892 [4th Dept 2007]; see also ESPN, Inc. v Office of the Commr. of Baseball, 76 F Supp 2d 383, 390 [SD NY 1999] [contractual "no-waiver provision has no application to the doctrine of election"]).
Here, all of the breaches of contract alleged by defendants occurred early on in the parties' contractual relationship. Specifically, the training was to occur prior to SWMP assuming operation of the pizzeria (see Michaels Aff., ¶ 8), the pizzeria's recipes were to have been supplied to defendants within a reasonable time following the April 1, 2018 execution of the Service Mark License Agreement (see § 4 [C]), and the $75,000 in renovation expenses allegedly attributable at least in part to preexisting health code violations was spent prior to defendants' reopening of the pizzeria in July 2018 (see Michaels Aff., ¶ 12; Riggione Reply Aff., ¶ 14). 
Yet, defendants make no claim that they ever informed Inferno of these alleged material breaches of contract, and plaintiff expressly denies receiving any such notice (see Riggione Reply Aff., ¶¶ 4, 7-9). Rather, defendants elected to continue operating the pizzeria and making installment payments to Inferno under the Note through October 1, 2018. And even following their November 2018 default, defendants did not notify Inferno of the alleged breaches at any time prior to the untimely filing of opposition papers.
Given defendants' election to the treat their agreements with plaintiff as valid and subsisting, despite knowledge of plaintiff's alleged material breaches, defendants lost their right to terminate the agreements on the basis of such breaches (see Awards.com, 42 AD3d at 188). And given defendants' failure to accord plaintiff timely notice of the alleged material breaches, defendants cannot rely upon such breaches as a basis for affirmative relief or as a defense to their nonperformance (see National Westminster Bank, U.S.A. v Ross, 130 BR 656, 675 [SD NY 1991], affd sub nom. Yaeger v National Westminster, 962 F2d 1 [2d Cir 1992]; cf. Albany Med. Coll., 296 AD2d at 702-703; Capital Med. Sys., 239 AD2d at 746).
Finally, the Court concludes that plaintiff has demonstrated its entitlement to an award of reasonable attorney's fees as against Michaels pursuant to paragraph (2) of the Guaranty and for a declaration that the judgment lien shall be retroactive to April 6, 2018 to the extent levied against the collateral that is the subject of the Security Agreement.[FN1]

CONCLUSION
Accordingly,[FN2]
it is
ORDERED that plaintiff's motion for summary judgment in lieu of complaint is granted in all respects; and it is further
ORDERED that plaintiff shall, within twenty (20) days from the date of this Decision & Order, submit a proposed judgment to the Court on notice to defendants (leaving blank spaces for the fee award and the total amount of the judgment) incorporating the relief granted herein, along with an affidavit with respect to attorney's fees,[FN3]
 and defendants shall have five (5) days to object to the form of the proposed judgment and the reasonableness of the requested fee award.
This constitutes the Decision & Order of the Court, the original of which is being transmitted to the Albany County Clerk for electronic filing and entry. Upon such entry, plaintiff's counsel shall promptly serve notice of entry on defendants (see Uniform Rules for Trial Cts [22 NYCRR] § 202.5-b [h] [1], [2]).
Dated: June 13, 2019
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 1-11, 16-17, 22-33.



Footnotes

Footnote 1:Defendants' opposition does not address these requests for relief.

Footnote 2:In view of this conclusion, the Court need not consider the other arguments tendered by plaintiff in reply, including the contentions that: (1) defendants' untimely opposition to the motion should not be considered; and (2) the vague and conclusory allegations of breach made by defendants are insufficient to raise a genuine factual dispute as to whether plaintiff materially breached the parties' agreements.

Footnote 3:Plaintiff is cautioned to submit "sufficient evidentiary basis for the [C]ourt to evaluate the value of [legal] services rendered" (Nichols v Nichols, 19 AD3d 775, 780 [3d Dept 2005] [internal citation omitted]).