McGuire v McGuire (2021 NY Slip Op 04816)





McGuire v McGuire


2021 NY Slip Op 04816


Decided on August 26, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 26, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CURRAN, WINSLOW, AND DEJOSEPH, JJ.


355 CA 20-01393

[*1]JEANNIE-MARIE MCGUIRE, INDIVIDUALLY AND SUING IN THE RIGHT OF MCGUIRE DEVELOPMENT COMPANY, LLC, MCG REAL ESTATE HOLDINGS, LLC, MCGUIRE ACQUISITIONS LLC, MCGUIRE CAPITAL, LLC, AND SHAMROCK SEVEN ACP, LLC; KATHLEEN MCGUIRE, INDIVIDUALLY AND SUING IN THE RIGHT OF MCGUIRE DEVELOPMENT COMPANY, LLC, DELAWARE AVENUE INVESTORS, LLC, GENESEE STREET INVESTORS, LLC, MCG REAL ESTATE HOLDINGS, LLC, MCGUIRE ACQUISITIONS LLC, MCGUIRE CAPITAL, LLC, AND SHAMROCK SEVEN ACP, LLC; AND MICHAEL MCGUIRE, INDIVIDUALLY AND SUING IN THE RIGHT OF MCGUIRE DEVELOPMENT COMPANY, LLC, DELAWARE AVENUE INVESTORS, LLC, GENESEE STREET INVESTORS, LLC, MCG REAL ESTATE HOLDINGS, LLC, MCGUIRE ACQUISITIONS LLC, MCGUIRE CAPITAL, LLC, AND SHAMROCK SEVEN ACP, LLC, PLAINTIFFS-APPELLANTS,
v
F. JAMES MCGUIRE, INDIVIDUALLY AND AS GENERAL MANAGER OF MCGUIRE DEVELOPMENT COMPANY, LLC, DELAWARE AVENUE INVESTORS, LLC, GENESEE STREET INVESTORS, LLC, MCG REAL ESTATE HOLDINGS, LLC, MCGUIRE ACQUISITIONS LLC, MCGUIRE CAPITAL, LLC, AND SHAMROCK SEVEN ACP, LLC, DEFENDANT-RESPONDENT, MCGUIRE DEVELOPMENT COMPANY, LLC, DELAWARE AVENUE INVESTORS, LLC, GENESEE STREET INVESTORS, LLC, MCG REAL ESTATE HOLDINGS, LLC, MCGUIRE ACQUISITIONS LLC, MCGUIRE CAPITAL, LLC, MCGUIRE PV HOLDING L.P., AND SHAMROCK SEVEN ACP, LLC, DEFENDANTS-RESPONDENTS. (APPEAL NO. 1.) 






UNDERBERG & KESSLER LLP, ROCHESTER (DAVID M. TANG OF COUNSEL), FOR PLAINTIFFS-APPELLANTS.
HARTER SECREST & EMERY LLP, BUFFALO (JOHN G. HORN OF COUNSEL), FOR DEFENDANT-RESPONDENT F. JAMES MCGUIRE, INDIVIDUALLY AND AS GENERAL

 


 Appeal from an order of the Supreme Court, Erie County (Timothy J. Walker, A.J.), entered September 24, 2020. The order, inter alia, granted the motion of defendant F. James McGuire for partial summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying the motion of defendant F. James McGuire, reinstating the fifth and sixth causes of action, and vacating subdivision one of the ordering paragraph, and as modified the order is affirmed without costs.
Memorandum: This case centers on a dispute over ownership interests in defendant McGuire Development Company, LLC (MDC). MDC was formed in 2006 by F. James McGuire (defendant) to provide real estate development and property management services for other constituent parts of the McGuire family business empire. Despite their at times tumultuous relationship, defendant invited five of his siblings—the three plaintiffs and nonparties Kelly McGuire (Kelly) and Jackie McGuire Gurney—to join MDC as members. At its creation, the siblings each had equal membership interests in MDC. By 2011, however, the membership interests were no longer equally held; defendant's membership interest in MDC was five percent more than the other members, reflecting his role as general manager. Defendant also acted as general manager for the other entities that make up the McGuire family business, which are the remaining defendants in this action (company defendants). Plaintiffs are members of most of the company defendants. Unlike plaintiffs, Gurney was employed by MDC.
In 2017, Kelly exited MDC, which resulted in her membership interest being distributed, pro rata, among the remaining siblings. Thus, at the start of 2018, defendant had an approximate 24.8% membership interest in MDC with the remaining members each having approximately an 18.8% membership interest. At around the same time as Kelly's exit, plaintiffs were in the process of negotiating with defendant a buyout of their own interests in MDC. During that same time period, however, i.e., throughout 2018 and early 2019, defendant and Gurney made a series of capital calls for MDC that had the practical effect of diluting plaintiffs' membership interest percentages to approximately 9.98% each. Defendant or Gurney purported to have given plaintiffs notice of each of the MDC capital calls by email.
Plaintiffs did not respond or take any other action with respect to those capital calls, except to object in mid-2019 that a capital call request made earlier in the year was procedurally defective. During the relevant time period, the only capital contributions to MDC were made by defendant and Gurney in November 2018 and by defendant in February 2019. Plaintiffs' failure to supply additional capital to MDC during that period is what resulted in the aforementioned dilution of their membership interests. 
Consequently, in May 2020, plaintiffs commenced this action alleging, inter alia, breaches of contract and fiduciary duty, and the improper dilution of their membership interests in MDC. Specifically, they allege that, under the terms of MDC's operating agreement, they did not receive proper notice of the capital calls in 2018 and 2019 that resulted in the dilution of their membership interests and, accordingly, plaintiffs seek a declaration of the membership interest percentages of all members of MDC. They also seek an equitable accounting of MDC's assets and the company defendants based on the alleged failure of those defendants to provide plaintiffs with access to their financial records. Shortly after the action commenced, the parties entered a stipulated standstill order that prevented defendant from selling all or substantially all of MDC's assets, making requests for additional capital contributions, or engaging in conduct "outside the ordinary course of business," until "further order of the [c]ourt."
In appeal No. 1, plaintiffs appeal from an order that, inter alia, granted defendant's motion for partial summary judgment and dismissed the fifth and sixth causes of action, alleging that defendant breached the MDC operating agreement's notice requirement with respect to the capital calls that resulted in the dilution of plaintiffs' membership interests, determined that plaintiffs' membership interest percentages in MDC are 9.98% each, and denied plaintiffs' cross motion for, inter alia, summary judgment on the fifth cause of action, for breach of contract, and seeking an accounting of transactions involving the assets of MDC and the company defendants. In appeal No. 2, plaintiffs appeal from an order granting defendants' motion to vacate the stipulated standstill order in light of Supreme Court's determination of each party's membership interest percentage in MDC.
With respect to appeal No. 1, we conclude that the court erred in granting defendant's motion for partial summary judgment dismissing the fifth and sixth causes of action and in determining the membership interests in MDC, and we therefore modify the order in appeal No. 1 accordingly. The operating agreement provides, in relevant part, that all "notices, demands or requests provided for or permitted to be given pursuant to this [a]greement must be in writing," and requires that such notices "to be sent to any or all of the [m]embers shall be personally delivered or sent by first class mail, postage prepaid." There is no dispute that the challenged capital calls from 2018 and 2019 were sent only by email and thus did not strictly comply with that provision. In their briefs, the parties contend that the principal dispute is whether plaintiffs waived strict compliance with the notice provision through their course of conduct, and consequently whether email notice of the capital calls was sufficient.
In our view, however, defendant did not meet his initial burden on the motion because his own submissions raise issues of fact whether plaintiffs received any notice of the capital calls that resulted in dilution of their membership interests, and whether the calls that were noticed by email were actually responsible for the dilution of plaintiffs' membership interests in MDC (see generally Winegrad v New York Univ. Med., Ctr., 64 NY2d 851, 853 [1985]; Armstrong v United Frontier Mut. Ins. Co., 181 AD3d 1332, 1333-1334 [4th Dept 2020]; Parton v Piscitello, 2 AD3d 1382, 1383 [4th Dept 2003]). Specifically, based on defendant's own submissions, the precise amounts, timing, and method of the capital calls do not support the court's calculations of plaintiffs' membership interests in MDC or the court's conclusion about which capital calls actually diluted plaintiffs' membership interests in MDC. For example, although the emails to plaintiffs regarding requests for capital were made in February and July 2018, defendant's submissions establish that the dilution of plaintiffs' interest in MDC did not occur until November of that year. Further, based on defendant's own submissions, the value of the dilution in plaintiffs' interest in November 2018 is not comparable to the value of the capital calls purportedly noticed in the emails dated February and July 2018. Consequently, there are issues of fact with respect to whether plaintiffs had any notice at all of the capital call that actually resulted in the dilution of their membership interests in MDC (see generally Matter of Jacobs v Cartalemi, 156 AD3d 635, 639-640 [2d Dept 2017], lv denied 32 NY3d 903 [2018]; Davis v Jerry, 107 AD3d 1553, 1554-1555 [4th Dept 2013]; MNY 260 Park Ave. S., LLC v Max 260 Park Ave. S., LLC, 63 AD3d 628, 629 [1st Dept 2009]). For the same reasons, we conclude that the court erred in determining the respective membership interests in MDC, and that the court properly denied that part of plaintiffs' cross motion seeking summary judgment with respect to the fifth cause of action.
We also conclude that neither defendant nor plaintiffs is entitled to summary judgment because there are issues of fact whether plaintiffs, via course of conduct, waived strict compliance with the notice requirement with respect to MDC's capital calls. "[W]aiver requires . . . the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable" (Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184 [1982], rearg denied 57 NY2d 674 [1982]; see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [2006]). Specifically, the abandonment of a contractual right " 'may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage' " (Fundamental Portfolio Advisors, Inc., 7 NY3d at 104). We may not infer a waiver "from mere silence" (Coniber v Center Point Transfer Sta., Inc., 137 AD3d 1604, 1606 [4th Dept 2016] [internal quotation marks omitted]).
Of course, "a waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual provision" (Auburn Custom Millwork, Inc. v Schmidt & Schmidt, Inc., 148 AD3d 1527, 1531 [4th Dept 2017] [internal quotation marks omitted]). "Generally the existence of an intent to forgo such a right is a question of fact" (Fundamental Portfolio Advisors, Inc., 7 NY3d at 104; see Town of Mexico v County of Oswego, 175 AD3d 876, 878 [4th Dept 2019]), and "[a] waiver, not express, but found in the acts, conduct or language of a party is rarely established as a matter of law" (Alsens Am. Portland Cement Works v Degnon Contr. Co., 222 NY 34, 37 [1917]).
Here, to the extent that it is preserved for our review, we reject plaintiffs' contention that the nonwaiver clause and written amendment provision of MDC's operating agreement preclude a determination that plaintiffs waived the notice provision of the operating agreement. Even where a contract specifically contains a nonwaiver clause or a provision that it cannot be [*2]modified without a writing, a waiver may be established by the parties' course of conduct and actual performance (see Estate of Kingston v Kingston Farms Partnership, 130 AD3d 1464, 1465 [4th Dept 2015]; Stassa v Stassa, 123 AD3d 804, 806 [2d Dept 2014], lv dismissed 25 NY3d 960 [2015]; Aiello v Burns Intl. Sec. Servs. Corp., 110 AD3d 234, 245 [1st Dept 2013]).
Nevertheless, on this record, defendant did not meet his burden of establishing that plaintiffs' conduct constituted a waiver of the notice provision. Critically, in ascertaining whether plaintiffs' conduct in relation to capital call requests evidenced a waiver of the notice provision, their actions must be considered in the unique business context of the contested capital calls—i.e., that they were all made at a time when plaintiffs were in active negotiations with defendant about a buyout where plaintiffs would exit MDC. There is no dispute that the purported February 2018 capital call was MDC's first ever request for capital contributions, and therefore, there is no historical pattern of conduct that would support the conclusion that plaintiffs waived the notice requirement prior to any of the capital calls at issue here. Moreover, plaintiffs' emails from the time of the capital calls express surprise that MDC required additional capital from them, despite defendant's participation in the ongoing buyout negotiations, and do not reflect any intent to waive the notice requirement.
We further conclude that plaintiffs' conduct with respect to capital calls made by other entities that comprise the McGuire family business is irrelevant to waiver of the notice requirement for MDC because any waiver by plaintiffs with respect to a separate contract or agreement cannot be imputed as a waiver of the notice requirement in MDC's operating agreement. Cases relied on by defendant are inapposite because they involve the prior conduct of parties as it related to the specific agreement at issue in the litigation (see e.g. Matter of Murphy v Murphy, 140 AD3d 1168, 1170-1171 [2d Dept 2016]). Ultimately, within the unique context of the ongoing negotiations of plaintiffs' buyout from MDC, and the lack of any history of capital calls for that entity, we conclude that defendant did not establish, as a matter of law, that plaintiffs intended to waive the operating agreement's notice requirement with respect to the capital calls at issue here.
We agree with plaintiffs that the doctrine of tax estoppel does not preclude them from taking a position adverse to that stated in MDC's tax forms for the year 2018, which purportedly established that plaintiffs' membership interest percentages in MDC were approximately 16.15% each. Tax estoppel does not apply where, as here, the relevant tax documents are neither sworn nor signed by the party against whom they are used (see generally Matter of Sunburst Assoc., Inc., 106 AD3d 1224, 1226-1227 [3d Dept 2013]). Further, that doctrine does not apply because the relevant documents were not prepared by plaintiffs, but rather by a third party at the direction of MDC, which is managed by defendant (see Matter of Cusimano v Strianese Family Ltd. Partnership, 97 AD3d 744, 745 [2d Dept 2012], lv dismissed in part and denied in part 20 NY3d 1001 [2013]). It would distort the doctrine of tax estoppel beyond recognition to conclude that plaintiffs are precluded from taking a position contrary to a tax document they did not swear to or sign, and which was, in effect, prepared by their opponents (cf. Rizzo v National Vacuum Corp., 186 AD3d 1094, 1095 [4th Dept 2020]; Matter of Ansonia Assoc. L.P. v Unwin, 130 AD3d 453, 454 [1st Dept 2015]).
We reject plaintiffs' contention that the court erred in denying that part of their cross motion seeking an accounting of transactions involving assets of MDC and the company defendants. Plaintiffs did not establish that defendants breached a fiduciary duty owed to plaintiffs with respect to their right to inspect and access the relevant financial records (see generally Feldmeier v Feldmeier Equip., Inc., 164 AD3d 1093, 1095-1096 [4th Dept 2018]). Specifically, the record contradicts plaintiffs' assertion that they were denied access to the relevant financial records inasmuch as defendants repeatedly offered to make those documents available to plaintiffs. Plaintiffs have not demonstrated that defendants were required to copy and forward the requested financial records to plaintiffs.
In light of our determination in appeal No. 1 that neither defendant nor plaintiffs are entitled to summary judgment, and that the court therefore erred in determining the respective membership interest percentages in MDC, we also conclude that, in appeal No. 2, the court erred in granting defendants' motion to vacate the stipulated standstill order. The court granted that motion on the ground that the order in appeal No. 1 determined the membership interests in MDC. Thus, because we are modifying the order in appeal No. 1 by, inter alia, vacating the [*3]court's determination of the membership interests in MDC, we consequently reverse the order in appeal No. 2, deny defendants' motion, and reinstate the stipulated standstill order.
Entered: August 26, 2021
Mark W. Bennett
Clerk of the Court